### JOHN HANCOCK MUT. LIFE INS. CO. v. CITY OF HURON.

(Circuit Court, D. South Dakota. May 8, 1897.)

1. NEGOTIABLE BONDS—BONA FIDE HOLDERS—PRESUMPTIONS.
   In an action upon negotiable bonds, when evidence has been given to show that they are illegal, the plaintiff cannot rely on the presumption arising from title and possession thereof, but must prove that he gave value therefor in the usual course of business, in order to constitute himself a bona fide holder.

2. MUNICIPAL BONDS—VALIDITY—EXCESSIVE INDEBTEDNESS.
   Municipal bonds issued at a time when the debt of the municipality exceeds 5 per cent. of its assessed valuation, and without any provision for a sinking fund, are illegal, under article 13, §§ 4, 5, of the constitution of South Dakota.

Jones & Culver, for plaintiff.
A. W. Wilmarth, for defendant.

CARLAND, District Judge. This action was commenced by the plaintiff, a Massachusetts corporation, against the defendant, a municipal corporation of this state, to recover from the defendant the amount of money claimed to be due to plaintiff on 240 coupons, of $15 each, detached from 20 bonds, of $500 each, issued by defendant on the 26th day of September, 1890. The bonds issued were all of the following form:

"The United States of America, State of South Dakota.
"$500.00.

"Bond of the City of Huron, Beadle County, State of South Dakota.

"The city of Huron, twenty years after date, for value received, will pay to bearer the sum of five hundred dollars at the banking house of Kountze Bros., New York City, with interest thereon at the rate of six per cent. per annum, payable semiannually, according to the terms of the annexed coupons.

"Issued pursuant to an election held September 25th, 1890, by authority granted by article 32 of section 7 of the charter of the city of Huron; said charter approved by the legislative assembly of the territory of Dakota March 8th, 1883. Issued for the purpose of funding the floating indebtedness of the city of Huron.

"In testimony whereof the city of Huron, Beadle county, South Dakota, has caused this bond to be signed by the mayor thereof, and countersigned by the city clerk of said city, and the seal of said city is affixed, this 26th day of September, A. D. 1890. H. J. Rice, Mayor of the City of Huron.

"B. M. Rowley, City Clerk of the City of Huron."

A jury having been waived in writing, this action was on the 27th. day of April, 1897, tried to the court.

The defendant seeks to defeat a recovery by the plaintiff in this action upon certain grounds, which may be specified as follows: First, that at the time the bonds were issued the defendant had no power to fund its floating indebtedness; second, that at the time the bonds were issued the defendant had exceeded the amount of indebtedness which it lawfully could contract under the limitation contained in the constitution of this state; third, at or before the time said bonds were issued the defendant made no provision for the collection of an annual tax sufficient to pay the interest and principal of said bonds when due; fourth, that the proceeds of said bonds were used by the officers and agents of defendant for the purpose of paying the expenses incurred in carrying on a campaign to secure the location of the state capital at Huron, S. D., and that said proceeds never were paid into the treasury of defendant. The undisputed testimony shows that the bonds were issued for the purpose of raising money to carry on a capital campaign, and that the proceeds arising from the sale thereof were so used; that the equalized assessed value of the property subject to taxation in the city of Huron for the year 1890 was $3,014,764; that neither before or at the time of the issue of said bonds was there any provision made by defendant for the collection of an annual tax sufficient to pay the interest and principal of said bonds when due; that the indebtedness of the defendant, exclusive of the money in its treasury, at the times these bonds were issued, was $197,949.79. The plaintiff alleges in its complaint that it is the holder in good faith for value, before maturity, of the bonds and coupons involved in this action. This allegation is denied by the defendant in its answer. The plaintiff, in making out its prima facie case, relied upon the presumption that the holder of negotiable paper payable to bearer, subsequent to its date, holds it clothed with the presumption that it was negotiated to him at the time of its execution in the usual course of business, and for value, and without notice of any equities between the prior parties to the instrument. Goodman v. Harvey, 4 Adol. & El. 870; Goodman v. Simonds, 20 How. 365; Noxon v. De Wolf, 10 Gray, 346; Ranger v. Cary, 1 Metc. (Mass.) 373. Title and possession are one and inseparable to clothe the instrument with the prima facie presumption that it was indorsed or delivered at the date of its execution, and that the holder paid value for it, and received it in good faith in the usual course of business, without notice of any prior equities. It was not necessary for the plaintiff to show that it paid value for the coupons or bonds, in making out its prima facie case upon which it rested; but the defendant, in support of the denial in the answer, after the plaintiff had rested, had the undoubted right to show that the consideration of the bonds and coupons was illegal; that the instruments sued on were fraudulent in their inception, or that they had been lost or

stolen before they were negotiated to the plaintiff. And, if the defendant has proved any of these defenses, then it must prevail, unless the plaintiff again takes up the burden of proof which has been shifted back upon it, and proves that it gave value for the instrument in the usual course of business, in which event, as a general rule, it would still be entitled to recover. Fitch v. Jones, 5 El. & Bl. 238; Smith v. Braine, 16 Q. B. 244; Hall v. Featherstone, 3 Hurl. & N. 287; 2 Pars. Bills & N. 438. In Commissioners of Marion Co. v. Clark, 94 U. S. 285, Justice Clifford, in delivering the opinion of the court, said:

"Where the theory that the plaintiff paid value for the instrument depends solely upon the prima facie presumption arising from the possession of the instrument, the defendant may, if the pleadings admit of such a defense, prove that the instrument originated in illegality and fraud; and the rule is, if he establish such a defense, that a presumption arises that the subsequent holder gave no value for it. And it is also true that such a presumption will support a plea that the holder is a holder without consideration, unless the presumption is rebutted by proof that the plaintiff paid value for the instrument, in which event the plaintiff is still entitled to recover."

In the case of Stewart v. Lansing, 104 U. S. 505, it was distinctly held that in an action on coupons detached from certain bonds issued by the town of Lansing to aid a certain railroad, which bonds had been declared illegal by the courts, the holder of the coupons could not rely upon the presumption arising from the possession thereof, but, after the bonds were shown to be illegal, it was necessary for the holder to show that he paid value for the same; and, on failing to do so, a verdict was directed for the town. As the plaintiff introduced no testimony to show that it paid value for the coupons, it is necessary to inquire as to whether the testimony introduced by the defendant proved that the bonds in question originated in illegality or fraud. Section 4, art. 13, Const. S. D., provides:

"The debt of any county, city, town, school-district, or other sub-divisions, shall never exceed five per centum upon the assessed value of the taxable property therein."

Section 5, art. 13, provides:

"Any city, county, town, school-district, or any other sub-division, incurring indebtedness, shall at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof, when due."

The only provision contained in the charter of the defendant under which it is claimed these funding bonds were issued is found in the enumeration of the powers of the city council of defendant, and is worded as follows:

"To borrow money and for that purpose to issue the bonds of the city in such denominations for such length of time, not to exceed twenty years, and bearing such rate of interest, not to exceed 7% per annum, as the city council may deem best."

In the view I take of this case, I do not find it necessary to decide whether the provision quoted from the charter of defendant empowers the defendant to issue bonds to fund its floating indebtedness. I am of the opinion, however, that the language quoted from the constitution of this state, when applied to the facts stated herein,

rendered the bonds, and necessarily the coupons involved in this action, illegal in their inception, and that the acts of the agents and officers of the defendant in issuing these bonds under false pretenses, and converting the proceeds thereof to the use of influencing the people of the state to vote for the defendant as the proper site for the location of the state capital, was not only illegal, but actually fraudulent. It follows that the bonds and coupons involved in this action are shown by the evidence to have originated in illegality and fraud, and, there being no evidence that the plaintiff is a bona fide holder for value of the same, it can take nothing by this action. Judgment should be entered for the defendant.