SMITH *v.* WERKHEISER.

| 152  177|
|f153  ¹666|

1. FRAUD—MISREPRESENTATIONS— RELIANCE — DILIGENCE — PARTY
   DEFRAUDED.

   Where the seller of a newspaper made fraudulent misrepre-
   sentations concerning its circulation which were relied upon,
   the fact that the buyer undertook to verify the statements
   from the books of the paper, which contained a true state-
   ment of the circulation, did not deprive him of his remedy,
   since a defrauded party does not owe to the party who de-
   frauds him an obligation to use diligence to discover the
   fraud.

2. SAME—DAMAGES—MEASURE.

   The measure of damages for fraud in misrepresenting the cir-
   culation and receipts for advertising of a newspaper sold is
   the difference between the actual value of the paper and the
   value it would have had had the facts been as represented;
   and where in such a case one of the sellers testifies that the
   cash receipts for the year preceding the sale affords a proper
   measure of the worth of a newspaper and that the buyer was
   informed of the rule before he purchased, the measure of
   damages sufficiently appears.

3. SAME — REMEDIES — ACTION AT LAW — RECOUPMENT IN ACTION
   FOR PRICE.

   Where personal property is sold by means of fraudulent mis-
   representations, the purchaser may recover his damages in an
   action at law against the seller, or he may recoup when sued
   at law for unpaid purchase money whether the suit be
   brought by the seller or by his assignee, unless such assignee
   stands in the attitude of a good-faith purchaser of negotiable
   paper.

4. SAME—EQUITY—DEFENSES AVAILABLE.

   It is a general rule that a party defendant in a suit in equity
   may avail himself of every legal defense not inequitable in its
   nature, and the defense of fraudulent misrepresentations in
   the sale of personal property is not inequitable.

5. SAME—REMEDY IN EQUITY—CANCELLATION.

   A bill will lie against a purchaser with notice to cancel notes
   and a chattel mortgage upon which foreclosure is threatened
       152 MICH.—12.

where the notes represent the unpaid portion of the purchase price of goods sold by means of fraudulent misrepresentations and the damages for the fraud equal the amount of the notes, the remedy at law being inadequate.

Appeal from Genesee; Wiest, J., presiding. Submitted February 26, 1908. (Docket No. 26.) Decided March 31, 1908.

Bill by William V. Smith and J. Frank Woods against Keturah C. Werkheiser and others to enjoin the foreclosure of a mortgage, and to set the same aside on the ground of fraud. Defendant Keturah C. Werkheiser filed an answer in the nature of a cross-bill for the foreclosure of said mortgage. From a decree dismissing the bill, and granting the prayer of the cross-bill, complainants appeal. Reversed, and decree entered for complainants.

*Black & Roberts* and *Brennan & Cook*, for complainants.

*Lee & Parker* and *Brown & Farley*, for defendants.

CARPENTER, J. Defendant Keturah C. Werkheiser is the wife of her co-defendant, William H. Werkheiser, and the mother of the other two defendants, Frank F. Werkheiser and George Werkheiser. In the year 1905 the defendants William H., Frank F., and George Werkheiser, constituting a partnership under the name of W. H. Werkheiser & Sons, owned and published the Flint Daily News and the Genesee Democrat. November 16, 1905, they sold the same to complainants for the agreed consideration of $13,500. All the consideration except $4,261 was paid in cash. For that amount complainants gave their promissory notes secured by a mortgage on the plant. The mortgage authorized the mortgagee to take possession of the mortgaged property if any part of the same should be sold, assigned, or disposed of. Subsequently, this

mortgage was transferred to the first named defendant, Keturah C. Werkheiser. For the purpose of inducing complainants to make said purchase, certain false representations were made by Frank F. Werkheiser. One of those representations was that the paper had a circulation of 4,000, when in fact the circulation was not in excess of 2,500. Another of those false representations related to the amount of advertising done by the paper. Notwithstanding these false representations, complainants chose to keep the property purchased by them, and subsequently sold the same to another purchaser. Shortly after this second sale defendant Keturah threatened to seize said property on her chattel mortgage. Thereupon this suit in equity was instituted whereby complainants sought and obtained a temporary injunction restraining the threatened seizure, and wherein they prayed for a decree canceling said mortgage upon the ground of fraud. Defendant Keturah filed an answer in the nature of a cross-bill praying a decree of foreclosure. The case was heard on pleadings and testimony taken in open court and a decree entered dismissing complainants' bill and granting defendant relief on her cross-bill. From that decree an appeal is taken to this court.

Complainants have not disaffirmed the contract, and, therefore, they cannot seek relief upon the ground of rescission. They have affirmed the contract. They contend they were damaged by the fraud of defendants; that the amount of those damages exceed the amount represented by the mortgage in question; that defendant Keturah is not a bona fide holder of that mortgage, and that they have a right to a decree in equity canceling the same. The testimony that the firm of W. H. Werkheiser & Sons misrepresented the circulation is clear and convincing. It is insisted, however, that complainants placed no reliance upon this misrepresentation, but did rely upon an examination of the books which contained a correct statement of the circulation. It is true that complainants did under-

take to verify the statements made to them by an examination of the books, but we are convinced that that examination was by no means an exhaustive one. In short, we are bound to say that their examination of the books did not lead complainants to discredit the false statements made to them. It is urged that inasmuch as the books were placed at their disposal complainants were bound to ascertain the truth and to place no reliance upon the false statements that had been made to them. This is not the law. A defrauded party does not owe to the party who defrauds him an obligation to use diligence to discover the fraud. *Smith* v. *McDonald*, 139 Mich. 225; *Bristol* v. *Braidwood*, 28 Mich. 196. We are therefore of the opinion that it must be said that complainants did rely upon the false representations and that they did therefore have a cause of action against the members of the firm of W. H. Werkheiser & Sons for the alleged fraud. We are also of the opinion that it must be said that defendant Keturah was not a bona fide holder of the mortgage in question. The evidence convinces us that she took the same with knowledge of the fraud practiced by her husband and sons, and with actual notice, too, that complainants would raise the question of fraud to resist payment of the mortgage.

It is urged that the testimony affords no basis for measuring complainants' damages. We think otherwise. Defendant Frank F. Werkheiser testified that the cash receipts for the year preceding the sale affords a proper measure of the worth of a newspaper, and that this rule was stated to complainants before they purchased. We know from other testimony how much greater the annual earnings of the plant would have been had the circulation been as represented. In that case (that is, if the circulation had been as represented) the annual earnings the year before the sale would have exceeded the actual earnings by an amount greater than the mortgage indebtedness. This excess of earnings under the rule testified to by Frank F. Werkheiser indicates the difference in value

between the property as it was represented to be and as it actually was, and that difference is the measure of complainants' damages. *Page* v. *Wells*, 37 Mich. 415.

Defendants present an ingenious argument in support of their proposition that complainants were not damaged by the fraudulent representations. That argument briefly stated is this. It was represented to complainants by defendants that the gross income of the plant for the year preceding the sale was $18,800; that it is established by the testimony that it did earn that year $18,800; that this being so, the false statement relating to the circulation was utterly immaterial and affords no ground for claiming that complainants were damnified. We are forced to reject this argument because in our judgment it is not established by the testimony that the income of the property the year before complainants purchased was $18,800. It is true that some of defendants' witnesses testified that the income was as represented, but this was not corroborated by a production of the books covering this entire period—and we believe them to have been missing through no fault of complainants—and for that and other reasons we discredit the testimony. We are therefore compelled to reject the argument of defendants under consideration and to say that the testimony does satisfactorily prove that complainants' damages resulting from the fraud of defendants exceeded the indebtedness secured by the mortgage.

This disposition of the facts brings us to the important legal question in this case, viz., Can complainants resort to a court of equity for relief? There is no doubt that complainants might recover the damages caused by this fraud by bringing suit in a court of law against the defendants constituting the firm of W. H. Werkheiser & Sons. Nor is there any doubt that if complainants were sued in a court of law for the balance unpaid on the contract they might recoup the damages caused by said fraud. And this would be true whether that suit were brought in the name of the original parties to the fraud or in the

name of the assignee of those parties, unless that assignee stood in the attitude of a good-faith purchaser of negotiable paper. · We emphasize the foregoing propositions of elementary law by declaring that if defendant Keturah C. Werkheiser had brought suit in a court of law to recover the indebtedness secured by her mortgage, the fraud established in this case would constitute a complete defense. The decree rendered by the learned circuit judge has denied that defense. In other words, complainants, by the decree of the circuit court, have been denied a defense in a court of equity which they might have successfully interposed in a court of law. I think it may be said, as a general rule, that a party defendant in a suit in equity may avail himself of every legal defense not inequitable in its nature. Certainly the defense under consideration is not inequitable. On the contrary, it is an equitable, as well as a legal, defense, and precisely such a defense was allowed in equity in *Gilchrist* v. *Manning*, 54 Mich. 210. But I do not think that our determination of this case should rest entirely upon the proposition that complainants had a right to assert the claim of fraud in defense of the proceeding taken by defendant Keturah to foreclose her mortgage. To rest it upon that proposition alone would give complainants less than they ask, and less, in my judgment, than they are entitled to have; that is, it would not give them a decree canceling the notes and mortgage. When complainants instituted this suit defendant Keturah was threatening to seize the property mortgaged—and this she had a right to do if the mortgage was a valid and enforceable security. At that time complainants' damages caused by the fraud exceeded the mortgage indebtedness, and therefore an application of said damages in payment of said indebtedness would entirely satisfy the mortgage. Complainants had a right to have those damages so applied. It was the duty of defendant Keturah to recognize this right to so apply said damages and to surrender the mortgage. This duty she refused to perform. But on the contrary, as heretofore stated,

she insisted that the mortgage constituted a valid lien on the property described therein and threatened to seize the same. Thereupon this suit was commenced; and a temporary injunction restraining the threatened seizure was prayed for and granted. A more appropriate case for equitable relief cannot well be stated. Here is a chattel mortgage which on its face purports to be a lien on the property therein described. Complainants insist and have a right to insist that because of the fraudulent conduct of the mortgagees the mortgage is not a lien upon that property. It is idle to say that they should have resorted to a court of law for relief. Their remedy at law is entirely inadequate, for the mortgagee was about to proceed to seize the mortgaged property and thereby take a step which violated complainants' legal and equitable rights. This could have been prevented by no process issued by a court of law. But it could be and was prevented by an injunction issued by a court of equity. The issuance of that writ clearly did not exhaust the remedial authority of the equity court. That writ was issued when the suit was commenced—when the court assumed jurisdiction. It thereupon became and was the duty of that court to adjudicate the controversy and to render a final and appropriate decree—a decree which will afford adequate protection to complainants' rights—and that, it is clear, will be nothing less than a decree canceling the mortgage in controversy. This conclusion is in harmony with the authorities.

In *Carroll* v. *Rice,* Walk. Ch. (Mich.) p. 374, suit was brought in equity to procure the cancellation of certain securities given by complainant for the purchase of property on the ground that said purchase was induced by fraud. It was held that complainant's delay disentitled him to relief upon the ground of rescission, but that he had a right to have his damages for the fraud determined and when determined "indorsed as so much paid on his bond for the purchase money."

In *Ranney* v. *Warren*, 13 Hun (N. Y.), 11:

"The plaintiff's complaint alleged that by defendant's fraudulent representations he was induced to purchase a farm of the defendant for the sum of $18,000; that the farm was in fact worth not over $12,000; that if the defendant's representations had been true, the farm would have been worth $20,000; that the plaintiff paid in cash $5,000, assumed a mortgage of $2,000, and gave a bond and mortgage for $11,000, payable in $1,000 annual installments, one of which he has since paid."

He prayed that the bond and mortgage might be canceled, and for damages. The lower court dismissed this complaint on the ground that no damages had yet been sustained and that the facts alleged would defeat a recovery on the bond. This judgment was reversed, the court saying:

"Without discussing the correctness of the decision of the learned justice on the mere question of damages, it seems to us that he overlooked the fact that a part of the relief demanded  *  *  *  was the equitable relief of the surrender and cancellation of the bond."

See, also, *Parks* v. *Burbank*, 58 Iowa, 707; and *Badgett* v. *Frick & Co.*, 28 S. C. 176.

Defendants' counsel cite many authorities which hold that a defrauded party in order to rescind a contract must act with diligence and that he must restore to the party who defrauded him what he received. The propositions declared by these authorities are elementary principles of law. But they have no application to this case. Complainants are not seeking to rescind their contract. They have affirmed their contract and they recognize its binding force. They obtain relief in this case not upon the ground of rescission, but upon the ground that they are entitled to have their damages—damages computed upon the assumption that the contract is affirmed—resulting from defendants' fraud applied in payment of the mortgage in suit.

It follows from this reasoning that the decree entered

in the circuit court should be reversed and a decree entered in this court in accordance with the prayer in complainants' bill. Complainants will recover costs of both courts.

GRANT, C. J., and HOOKER, MOORE, and McALVAY, JJ., concurred.