MERCHANTS' NATIONAL BANK *v.* WADSWORTH.

1. BILLS AND NOTES — BURDEN OF PROOF — HOLDER IN DUE COURSE—FRAUD.

Where the defense to an action on a promissory note was that the original indorsee fraudulently misrepresented the quality and condition of a stallion for which the notes were given, the burden was on the holder to show that the note was purchased without notice of its infirmities.

2. SAME.

The evidence for defendants that fraud was committed in the negotiation of the notes being uncontradicted, and no evidence to show the good faith of plaintiff having been offered, a verdict and judgment for defendants was supported by the record.

Error to Hillsdale; Chester, J. Submitted June 7, 1911. (Docket No. 9.) Decided July 5, 1911.

Assumpsit by the Merchants' National Bank against Fred B. Wadsworth and Burton A. Bowditch on certain promissory notes. Judgment for defendants. Plaintiff brings error. Affirmed.

*DeWitt C. Wilson* and *Frankhauser & Cornell*, for appellant.

*Fellows & Chandler*, for appellees.

MOORE, J. The plaintiff brought suit on two notes which are alike except as to time when due. We insert but one of the notes. It reads as follows:

"60.00.  PITTSFORD, MICH., Aug. 17th, 1906.
  "Aug. 1st, 1909, after date I promise to pay to Fred Ordway, or bearer, sixty dollars at ——— value received, with interest at the rate of six per cent. payable annually.
  [Signed]  "FRED B. WADSWORTH.
  "B. A. BOWDITCH."

On the back of said notes appears the following:

"Fred Ordway." "J. Crouch & Son." "Pay to any bank or banker or order.   Merchants' National Bank, La Fayette, Ind., W. G. Gude, Cashier."

The defendants pleaded the general issue and gave notice that the notes were obtained by fraud to which J. Crouch & Son were parties; that the plaintiff was not a bona fide holder of the notes; that it is the agent of J. Crouch & Son; that the notes did not come into its possession until two or more interest payments were past due and unpaid.   The case was tried before a jury.   From a verdict and judgment in favor of the defendants, the case is brought here by writ of error.

Counsel for appellant say in their brief (we quote):

"The sole question to be determined in this case is whether or not the Merchants' National Bank were the holders of the notes in question in such a manner as to entitle them to maintain an action on the notes."

And that a verdict should have been directed in favor of the plaintiff.   Defendants insist that the question is whether the plaintiff is entitled to maintain an action on the notes freed from the defenses which exist between the makers of the notes and the payee, and counsel say the only mistake the circuit judge made was in declining to direct a verdict in favor of defendants.   Not all of the testimony taken appears in the record, but the following does appear:

"The said defendants, to maintain and prove the issue on their part, produced 11 witnesses who gave evidence, in substance, that the transaction which resulted in the giving of the two notes in suit was fraudulent, and that the sale of the horse was a fraud upon the defendants, perpetrated by Ordway and J. Crouch & Son, which evidence was not contradicted by the plaintiff, the fraud proven being the fraud set up in the defendants' plea and notice relating to that question, but these witnesses had no knowledge and gave no evidence as to whether or not plaintiff was the owner of the note, or held it as collateral

security for a loan, or whether it was a mere collecting agency for J. Crouch & Son. The record contains all the evidence submitted at the trial on the question as to whether the plaintiff was the owner of said notes, or held them as collateral, or was simply a collecting agent. Defendants also gave testimony showing that the horse Circus was tendered back to Fred Ordway as soon as defendants learned of the fraud."

The testimony which is set out in the record is that of the stenographer of J. Crouch & Son for more than five years, who testified in detail about their method of doing business and especially with reference to their dealings with the bank. He left the employ of J. Crouch & Son before the notes in question came to the hands of the bank. The cashier of the bank also testified. His knowledge of the transaction seemed to be of the most general character. His claim was that the bank held the notes as collateral security to a loan of $10,000 which the bank had made to J. Crouch & Son which he at first stated was made in May, 1909, but afterwards testified was made at a later date. He testified in part:

"I will ascertain the amount of the loan we made to Crouch & Son at the time we took these notes, and the amount of collateral we received for the loan. Jephthah Crouch is a stockholder of the Merchants' National Bank. He has held a nominal amount of stock for a number of years, seven or eight years. He has been a director since the first of last year. He was made a director the first of last year, January, 1910.

"*Q.* You stated to the commissioner that he had been a director of the bank since the first of last year?

"*A.* No; he had not been since the first of last year. The 1st of January, 1910, my impression is. We put one or two directors on the board the latter part of last year, and increased the directors the first of this year two or three additional members. I am not positive whether Mr. Crouch was elected the last of last year or the first of this year.

"*Q.* Have you any agreement with J. Crouch & Son other than what you have stated regarding the papers and notes that were placed in your hands by them?

"*A.* We have a written agreement between J. Crouch

& Son and the bank respecting notes that are left for collection.

"*Q.* What is the date of that agreement?

"*A.* I could not say.   Some few years back."

He failed to produce any books of the bank or to ascertain the amount of the collateral or to produce the written agreement.   No one was produced who claimed to have personal knowledge of what occurred at the time the notes came into the hands of the bank.   In view of the undisputed evidence that the notes were obtained by fraud and the paucity of the evidence on the part of the bank, the language of Justice HOOKER, speaking for the court in *Thompson* v. *Village of Mecosta*, 127 Mich. 522 (86 N. W. 1044), would seem to be quite in point:

"It was incumbent upon the plaintiffs to show that the bond was purchased without notice of its infirmities, and counsel for defendant claim that the proof does not show it.   The evidence is said to show that it was taken in the course of business at the bank.   This testimony is based upon the books of the bank rather than the recollection of the transaction.   It does not appear that the employé of the bank who took the bond from the Hutchinson Manufacturing Company is known.   Certainly it is not clear that he was produced as a witness.   The burden being on the plaintiffs, the presumption is that it bought with notice. Unless the fact that the bond was taken in the course of the bank's business raises a presumption that it was taken without notice, the plaintiffs have failed to offer any proof of a want of notice.   Counsel for plaintiffs contend that such presumption arises, and, if it does, we cannot question the finding of the circuit judge.   Newkirk, the president of the bank, gave the only testimony upon the subject. He did not say that the transaction was within his personal knowledge or recollection.   The only showing that it was purchased in the course of business is the fact that the bookkeeping of the bank shows that it was purchased and applied on the Hutchinson Manufacturing Company's note; but the showing made is as consistent with notice as with a want of it.   Why should it, then, be assumed that there was no notice, when the evidence of what the transaction really was is peculiarly within the control of the bank, and the burden of proving the negative is im-

posed upon the plaintiffs? Want of notice is a substantive fact to be proved, and a want of evidence upon the subject does not prove such fact. Counsel say that 'the only difference between the case of *Drovers' Nat. Bank* v. *Potvin* [116 Mich. 474, 74 N. W. 724], *supra*, and this case is that in that case the cashier testified to the conclusion that the bank had no notice, while here the ex-cashier swore to the exact facts.' The trouble is that the ex-cashier has not testified about the transaction, and apparently knows nothing about it. We think the plaintiffs failed to show that the bank was a bona fide purchaser. See *John Hancock Mut. Life Ins. Co.* v. *City of Huron* [C. C.], 80 Fed. 652. There is no testimony tending to show whether the plaintiffs were bona fide purchasers or not. *Tilden* v. *Barnard*, 43 Mich. 376 (5 N. W. 420, 38 Am. Rep. 197)."

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER, and MCALVAY, JJ., concurred.