## In re MANISTEE WATCH CO.

(District Court, W. D. Michigan, S. D, July 15, 1912.)

1. MUNICIPAL CORPORATIONS (§ 894*) — RECOVERY OF MONEY WRONGFULLY PAID.

Where money of a municipality has been paid out on a contract for an indebtedness which the municipality had no authority to make, it may be recovered back.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1877, 1878, 2188; Dec. Dig. § 894.*]

2. MUNICIPAL CORPORATIONS (§ 894*)—PREFERRED CLAIMS—UNLAWFUL DIVERSION OF MUNICIPAL FUNDS.

Where the funds of a municipality have been unlawfully diverted and can be traced into the property of an insolvent, they may be reclaimed as a trust fund by the municipality before any distribution is made to the general creditors of the insolvent.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1877, 1878, 2188; Dec. Dig. § 894.*]

3. MUNICIPAL CORPORATIONS (§ 948*)—BONDS—BONA FIDE PURCHASER.

A purchaser of municipal bonds must, at his peril, ascertain that the municipality had the power to issue the bonds, and that the authority assumed by its officers issuing them had been conferred and had not been exceeded, and, where either the power of the municipality or the authority of its officers to issue bonds is lacking, a holder of the bonds is not a bona fide holder.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1982–1990; Dec. Dig. § 948.*]

4. BANKRUPTCY (§ 345*) — MUNICIPAL CORPORATIONS — PRIORITIES — BONDS— BONA FIDE PURCHASER.

A city issuing bonds to procure, beautify, and ornament suitable ground for a public park turned over bonds to an industrial corporation establishing a factory in the city, and mortgaging its property to the city. The corporation sold the bonds and became a bankrupt. *Held* that, though the city was liable on the bonds in the hands of innocent purchasers, it was not entitled to a priority over the claims of other creditors of the corporation, in the absence of making the bondholders parties and disclosing that they were innocent purchasers.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

5. MUNICIPAL CORPORATIONS (§ 955*)—BONDS—FRAUD—PRESUMPTIONS.

Where there was fraud or illegality in the inception of municipal bonds, a purchaser, seeking to enforce payment, has the burden of showing that he or some one under whom he claims was a bona fide holder for value.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2002–2009; Dec. Dig. § 955.*]

6. BANKRUPTCY (§ 345*) — CLAIMS — PRIORITY — MUNICIPAL CORPORATIONS — BONDS.

Where a city issued bonds, and a committee appointed to disburse the funds to be derived therefrom turned over bonds to a corporation establishing a factory in the city, and mortgaging its property to the city, and the committee was financially responsible, the city, on the bankruptcy of the corporation, could not claim priority on the theory that it was in the position of a cestui que trust whose trustees had wrongfully converted its funds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 531, 532, 534, 539, 540; Dec. Dig. § 345.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of the Manistee Watch Company, a bankrupt, on petition of trustee for leave to sell property free of the lien of a mortgage to the City of Manistee, and a cross-petition of the city to have its claim given priority over claims of other creditors. Petition granted, and cross-petition denied.

Norris & McPherson, of Grand Rapids, Mich., for City of Manistee.

Cleland & Heald, of Grand Rapids, Mich., for trustee.

SESSIONS, District Judge. In March, 1905, the common council of the city of Manistee, claiming to act under the city charter, adopted a resolution to submit to the qualified voters of the city a proposition to bond the city for $50,000 "for the purpose of procuring, beautifying and ornamenting suitable ground for one or more public parks within the city." An election was held and the bonding proposition received the favorable vote of the electors. Subsequently, pursuant to directions of the council, the mayor and clerk prepared and executed the bonds and advertised them for sale. No purchasers were found, and the bonds were not sold.

At the time of the adoption of the first resolution and as a part of the same proceedings, the mayor was authorized to appoint a committee of seven citizens of the city of Manistee to handle and disburse the fund to be derived from the issue and sale of the bonds. This committee was appointed by the mayor before the election. Three years later, and in May, 1908, this committee reported to the council that a contract had been negotiated with W. R. Rath and Jos. M. Bachner for the establishment of a watch factory in the city and recommended its approval, and execution by the proper city officers. By the terms of the contract so presented Messrs. Rath and Bachner agreed to construct, operate, and maintain in the city of Manistee a watch factory of specified dimensions and equipment, and to employ therein an average of 250 persons for a period of 5 years. They also agreed to give to the city a mortgage upon the factory plant and premises to secure the performance of the contract on their part. The city on its part agreed to turn over to them park bonds of the par value of $25,000 the issuance of which had been authorized by the voters for park purposes.

Pursuant to a resolution of the council, the contract was executed by the mayor and clerk of the city. Messrs. Rath and Bachner incorporated the Manistee Watch Company with themselves as its principal officers, and assigned their interest in the contract to the company. The factory was constructed, the bonds turned over to the company, and by its officers negotiated and sold, and the mortgage given to secure the further performance of the contract. The seven members of the committee who procured the deal to be made and the persons by and through whom the bonds were sold are all solvent and amply responsible financially. The Watch Company is bankrupt, owes debts amounting to about $50,000 aside from the claim of the city of Manistee, and has little or no property except its factory plant

and premises. If the claim of the city is valid and entitled to priority, the general creditors will receive nothing.

Disregarding any and all imperfections and irregularities in the pleadings and in the method of bringing this matter before the court and coming directly to the merits of the case, the important question presented relates to the right of the city of Manistee to a lien upon the factory and premises of the bankrupt, or the proceeds of the sale thereof, which shall have priority over the claims of general creditors. It is conceded that the contract between Messrs. Rath and Bachner and the city of Manistee and the mortgage given by the bankrupt to the city are invalid, and therefore do not constitute a lien upon the factory property of the bankrupt. It follows that the trustee in bankruptcy is entitled to have the property sold free of such lien. However, the city of Manistee claims that it is entitled to a prior lien upon the property for $25,000, not by virtue of the contract or mortgage, but because its funds to that amount have been wrongfully diverted by its officers and the officers of the Watch Company and have been used in the construction of the factory and can be traced directly into that property.

[1, 2] In other words, the city invokes the aid of the familiar rules (1) that, when the money of a municipality has been paid out on a contract or for an indebtedness which the municipality had no authority to make or incur, it may be recovered (City of Chaska v. Hedman, 53 Minn. 525, 55 N. W. 737; City of Geneseo v. Geneseo Natural Gas, etc., Co., 55 Kan. 358, 40 Pac. 655; People v. Fields, 58 N. Y. 491); and (2) that, where public funds have been unlawfully diverted and can be traced into the property of an insolvent estate, they may be reclaimed as a trust fund by the municipality, which is their rightful owner, before any distribution is made to the general creditors of the insolvent (Village of Reed City v. Reed City Veneer & Panel Works, 165 Mich. 599, 131 N. W. 385; Smith v. Township of Au Gres, 150 Fed. 257, 80 C. C. A. 145, 9 L. R. A. [N. S.] 876; Board of Commissioners v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. [N. S.] 1100). But to bring itself within the rules above stated the city must show that its funds have been unlawfully diverted. No moneys have been taken from its treasury unless it can be said that the unlawful issue of its bonds, or obligations to pay, is the equivalent of the unlawful use and diversion of its funds. The city has not paid the bonds, and has not been injured financially, unless it is legally liable upon them. The funds of the city have not been diverted unless it can be compelled to pay the bonds to the holders thereof. Certainly no one who was a party to, or a participant in, or who had knowledge of, the illegal transaction by and through which the bonds were turned over to the Watch Company as a bonus, can successfully make any claim against the city. In other words, no one except possibly a bona fide holder of the bonds for value can recover upon them. Upon the present meager record, the liability of the city upon these bonds, even to an innocent purchaser for value, may well be doubted. The resolution of the city council submitting the bonding proposition to a vote of the

freeholders and electors specified the nominal purpose of ·the bond issue in a very general, uncertain, and indistinct manner, while the records of the council proceedings in the same connection show very clearly and distinctly the real and illegal purpose of such issue.

[3] A purchaser of municipal bonds must, at his peril, ascertain not only that the municipality had the power to issue such bonds, but also that the authority assumed by the officers or agents executing or issuing them had been conferred and has not been exceeded.· If either the power of the municipality or the authority of its officers to issue bonds is lacking, there can be no such thing as a bona fide holding thereof. 28 Cyc. 1609, 1620, 1621, and 1622.

[4] Passing these questions, however, and assuming that the city of Manistee is liable upon these bonds in the hands of innocent purchasers, insuperable difficulties and obstacles still exist to a recovery in this proceeding. The bondholders have not been made parties and the character of their holdings cannot be determined in such manner as to be binding upon them, and, even if the city could represent them, there is nothing in the proofs to indicate that any bond·is at the present time or ever has been in the hands of an innocent purchaser. Both the testimony and the legal presumptions are to the contrary.

[5] Where it is shown that there was fraud or illegality in the inception of municipal bonds, the burden is thrown upon the purchaser who seeks to enforce payment to show that he or some one under whom he claims was a bona fide holder for value. Lytle v. Town of Lansing, 147 U. S. 59, 13 Sup. Ct. 254, 37 L. Ed. 78; Schmid v. Village of Frankfort, 141 Mich. 291, 104 N. W. 668; John Hancock Mut. Life Ins. Co. v. City of Huron (C. C.) 80 Fed. 652; Tracey v. Town of Phelps (C. C.) 22 Fed. 634.

[6] The final contention of the city of Manistee is that it is in the position of a cestui que trust whose trustees have wrongfully converted and invested its funds, and therefore that· it has an election of remedies, either to recover its funds from the trustees or to take the property in which such funds have been invested. The fallacy of this contention is apparent. Neither the city nor its officers had any right or power directly to invest the city funds in an industrial factory, nor to issue bonds of the city and donate them as a bonus to the promoters of such a factory. What it could not originally do directly it cannot now do by indirection or by ratification. To permit the city to appropriate to itself substantially all of the property of the bankrupt estate for the purpose of saving its officers and trustees from the consequences of their wrongdoing, and thus to deprive those who have innocently extended credit to the bankrupt· of all chance to recover their legitimate claims, would be grossly unjust. All of the persons by and through whom the illegal issue of these bonds ·was accomplished are amply responsible, and are legally liable to the city for any injury which it has suffered because of·their unlawful acts. No necessity exists for a resort to any unusual and extraordinary measures for the protection of the public interests, and the court will not lend its aid to any plan or scheme, however specious and plausible it may appear, by which innocent

creditors of a bankrupt estate will be deprived of their moneys for the benefit of wrongdoers.

The petition of the trustee in bankruptcy will be granted, and the cross-petition of the city of Manistee will be denied.