JOHN SCHWEYER & CO. *v.* MELLON.

1. MORTGAGES—FRAUD—BURDEN OF PROOF—BONA FIDES.
   Where fraud in procuring a note and mortgage is established by defendant, in a suit to foreclose an assigned mortgage, the burden devolves upon plaintiff to prove that it was a holder for value before maturity without notice.

2. SAME—FORECLOSURE BY ASSIGNEE.
   The assignee of a mortgage, being the equitable holder thereof, is entitled to file a bill for foreclosure.

3. SAME—EVIDENCE—BONA FIDES.
   Evidence *held*, insufficient to show that plaintiff was a holder for value. or without notice. of the assigned mortgage.

4. SALES—FRAUDULENT REPRESENTATIONS—CAVEAT EMPTOR.

Where one makes false representations of material facts, which are exclusively within his knowledge, and the other party relies upon them to his injury, liability for such false representations follows, and it does not lie in the mouth of the party perpetrating such fraud, when called to account, to say that his victim should have been more vigilant, should have been less credulous.

5. SAME—CONTRACTS—FRAUD—RESCISSION—LACHES.

Defendant was not guilty of laches in rescinding a contract for the purchase of a saloon business where he conducted the business for less than three months and, after putting additional money into the business in order to make it pay, if possible, he demanded a return of the mortgage given to secure the purchase price and, within four months, turned over the business to the person from whom he had purchased such interest and brought suit for the rescission of the sale on the ground of fraud.

6. SAME—SET-OFF AND RECOUPMENT—DAMAGES.

The purchaser of an interest in a saloon business may, without rescinding the contract for fraud in its procurement, when suit for foreclosure is brought by an assignee who is not a holder in good faith of the mortgage given to secure payment of the purchase price, offset in such suit damages growing out of such fraud where such damages exceed the amount of the mortgage.

Appeal from Chippewa; Fead, J. Submitted April 3, 1917. (Docket No. 14.) Decided May 31, 1917.

Bill by John Schweyer & Company against Joseph T. Mellon and another to foreclose a mortgage. Defendants filed an answer in the nature of a cross-bill asking for the cancellation of the mortgage as fraudulent. From a decree dismissing both bill and cross-bill, plaintiff appeals. Affirmed.

*Davidson & Hudson,* for plaintiff.
*McDonald & Kaltz,* for defendants.

FELLOWS, J. Plaintiff is an Illinois corporation engaged in the wholesale liquor business at Chicago. It

seeks by this proceeding the foreclosure of a mortgage executed by the defendants on the 20th day of November, 1912, to one Albert E. Hagen, for the sum of $1,250, on lands situated in Chippewa county, and which mortgage it alleges was assigned to it early in December of the same year. The defendants answer the bill, and allege in detail fraud on the part of Hagen in procuring the mortgage in question, and deny its validity; also, deny its assignment to plaintiff, and deny that plaintiff is a holder in good faith and for value. It is unnecessary to here detail the allegations of the answer, as they are sufficiently broad to justify the admission of testimony of the facts which we shall presently relate. The defendants, by way of cross-bill in their answer, set up the facts constituting the fraud of Hagen, allege want of *bona fides* of plaintiff, and pray for the cancellation of the mortgage in question. As the trial court dismissed the cross-bill for want of proper parties, and defendants have not appealed, we need make no further reference to it. The trial court found the facts to be with defendants and dismissed the bill. Plaintiff appeals.

Defendant Joseph T. Mellon for about 30 years followed the trade of a mechanical engineer. His home was in the city of Chicago. Shortly prior to November 20, 1912, he saw an advertisement in the Daily News advertising a half interest in a saloon business in that city for sale. Answering the advertisement, he met Albert E. Hagen, who was conducting the saloon at 319 South La Salle street. He had several conversations with Hagen before making the purchase. Hagen claimed to him that his reason for wanting to sell was that he wanted a partner to take care of his Chicago place while he was away in connection with business in Hinckley, Ill. Hagen represented that he was doing a business of $60 a day with a profit of over $20 a day; that he had $300 worth of stock on hand;

had a long-term lease on the premises at $250 per month; his price for the half interest was $2,250, which he represented was much less than it was worth. Defendant asked to see his books, but Hagen told him he kept no books, but that his cash register showed the daily sales of $60. Hagen referred him to John Schweyer, the president, treasurer, and general manager of the plaintiff company. The record discloses that defendant had a talk with Mr. Schweyer, but the details of the conversation did not appear, as Mr. Schweyer is now deceased and defendants' testimony, as to conversation with him, is within and prohibited by the statute (section 12856, 5 How. Stat. [2d Ed.]; 3 Comp. Laws 1915, § 12553). After these various talks with Hagen and the one with Schweyer, defendant purchased the half interest in Hagen's saloon business, paying $1,000 in cash and giving the mortgage in question. Hagen took him to the office of the attorney for, and director of, plaintiff to have the mortgage drawn. Defendant continued as a partner with Hagen for about four months, putting in about $250 additional to make up his share of the losses. He then quit the business and brought suit for the rescission of the contract and an accounting, which suit is still pending against Hagen. He had, before that time, demanded return of his note and mortgage. Hagen was only away from the saloon two days. So far as this record discloses, he had no business at Hinckley, and we are satisfied that his Hinckley business was a myth used to trap defendant. The business of the saloon only amounted to about $40 a day and did not pay expenses. Hagen did not have a long-time lease, although it is apparent he would be permitted to stay indefinitely if the rent was paid. The rent was $375 per month, which was reduced to $250 per month by subleasing to a cigar stand; how long

this sublease was for does not appear. The stock on hand only amounted to $50. Defendant testifies fully in open court to the transaction and is corroborated in some degree. Plaintiff did not call Hagen as a witness, although he was available to it, nor was any attempt made to sustain the good faith of the sale, or to dispute the claim of defendant that he had been defrauded. We are satisfied on this record that an active, flagrant fraud was perpetrated upon defendant resulting in a loss to him of every dollar he put into the enterprise.

Fraud in procuring the note and mortgage having been established, the burden was upon the plaintiff to prove that it was the holder for value before due without notice of infirmities. There is some controversy as to the exact date of the transfer of the mortgage from Hagen to plaintiff, but in any event it was before maturity. It seems to be agreed by the parties that a mortgage executed as security for payment of a note is incidental thereto, and partakes of the negotiability thereof; that the equitable ownership passes by the transfer of the note with all the rights and remedies of an equitable owner of the mortgage. It therefore becomes unimportant for us to determine whether the law of Illinois, where the assignment of the mortgage took place, or the law of this State, controls as to the validity of such assignment, or what the law of that State is; it being the claim of plaintiff that under the laws of Illinois a mortgage may be transferred by indorsement and delivery as was done in this case. In any event, plaintiff is the equitable holder of this mortgage and as such entitled to file this bill.

The defect in the plaintiff's case lies in the absence of sufficient proof that it was the holder for value, and the total want of proof that it had no notice of the infirmities growing out of the original transaction.

There is an allegation in defendants' pleadings that plaintiff was a creditor of Hagen, but to what extent is not set forth. The only testimony bearing on the question of consideration moving from the plaintiff to Hagen was that of plaintiff's Chicago attorney, who testified that he had examined the books of the plaintiff, a loose-leaf ledger, and that the amount of this mortgage was credited on Hagen's account which appeared by the books to have been in excess of the amount credited, and who also testified to what was told him by Hagen and Schweyer as to Hagen's indebtedness. He did not keep the books, and there was no proof that they were correctly kept. Plaintiff's bookkeeper was not called, nor was any testimony given by any one who knew of the transactions between Hagen and plaintiff. Such facts were exclusively within the control of plaintiff, and its failure to call some witness who could testify with reference to its dealings with Hagen, or who could establish the correctness of its books, is entirely unexplained.

The record is barren of any testimony that the plaintiff took without notice of the infirmities, that it took *bona fides*. The burden was upon the plaintiff after proof of fraud to prove a negative, to prove want of notice. This it has failed to do. It was said by Mr. Justice HOOKER, speaking for the court in *Thompson* v. *Village of Mecosta*, 127 Mich. 522, 529 (86 N. W. 1044, 1047):

"The only showing that it (the bond) was purchased in the course of business is the fact that the bookkeeping of the bank shows that it was purchased and applied on the Hutchinson Manufacturing Company's note, but the showing made is as consistent with notice as with a want of it. Why should it, then, be assumed that there was no notice, when the evidence of what the transaction really was is peculiarly within the control of the bank, and the burden of proving the negative is imposed upon the plaintiffs? Want of

notice is a substantive fact to be proved, and a want of evidence upon the subject does not prove such fact."

To the same effect, see *Merchants' National Bank* v. *Wadsworth,* 166 Mich. 528 (131 N. W. 1108) ; *People's State Bank* v. *Miller,* 185 Mich. 565 (152 N. W. 257) ; *Tilden* v. *Barnard,* 43 Mich. 376 (5 N. W. 420, 38 Am. Rep. 197) ; *Hodson* v. *Eugene Glass Co.,* 156 Ill. 397 (40 N. E. 971) ; *Wright* v. *Brosseau,* 73 Ill. 381. The plaintiff having failed to prove that it took without notice and for value, defendants may avail themselves of the defense which could have been made between the original parties.

It is urged, however, by the plaintiff that the defense of fraud here relied upon is not available, that defendant should have made more careful investigation and should not have relied upon the representations of Hagen. It was said by Mr. Justice CARPENTER, speaking for the court in *Smith* v. *McDonald,* 139 Mich. 225 (102 N. W. 738) :

"This contention assumes that the defrauded party owes to the party who defrauded him a duty to use diligence to discover the fraud. There is no such obligation. One who perpetuates a fraud cannot complain because his victim continues to have a confidence which a more vigilant person would not have. The rule contended for by plaintiff, which requires the same diligence from all persons, has no application to cases of fraud. If it had, the very persons, viz., the credulous and unwary, who are the usual victims of fraud, would be at a disadvantage, and would often be denied redress."

Mr. Justice COOLEY, speaking for the court in *Eaton* v. *Winnie,* 20 Mich. 156 (4 Am. Rep. 377), said:

"Where one assumes to have knowledge upon a subject of which another may well be ignorant, and knowingly makes false statements regarding it upon which the other relies, to his injury, we do not think it lies with him to say that the party who took his word and relied upon it as that of an honest and truth-

ful man was guilty of negligence in so doing, as to be precluded from recovering compensation for the injury which was inflicted upon him under cover of the falsehood. If a party's own wrongful act has brought another into peril, he is not at liberty to impute the consequences of his acts to a want of vigilance in the injured party, when his own conduct and untruthful assertions have deprived the other of that quality and produced a false sense of security."

The courts of Illinois seem to be in accord with this rule. *Hicks* v. *Stevens*, 121 Ill. 186 (11 N. W. 241); *Linington* v. *Strong*, 107 Ill. 295.

In the instant case, the amount of the receipts and the amount of the profits were facts exclusively within the knowledge of Hagen. Where one makes false representations of material facts, which are exclusively within his knowledge, and the other party relies upon them to his injury, liability for such false representations follows, and it does not lie in the mouth of the party perpetrating such fraud, when called to account, to say that his victim should have been more vigilant, should have been less credulous.

It is urged that defendant should have acted more promptly in rescinding the contract, and the fundamental rule is invoked that one defrauded must act promptly on discovering the fraud in order to rescind the contract. The rule is well recognized that a defrauded party must act with diligence upon learning of the fraud and must restore to the party who defrauded him what he received in order to rescind. Can we say upon this record that defendant has been guilty of such laches, such want of diligence as precludes him from rescinding the contract, in view of the fact that neither Hagen nor plaintiff was in any way injured by the brief space of time that elapsed between the time defendant learned that he had been defrauded, his rescission of the contract, and his institution of the suit for such rescission and an accounting in the Illi-

nois court? We think not. It is apparent that defendant was giving the business a fair trial to determine whether it was as represented by Hagen. Hagen was not placed in any different position by the short delay; the business in no way deteriorated; indeed, defendant put an additional $250 into the business in attempting to make it a success. At the end of less than three months from the time he went into the business, he demanded a return of the mortgage, and in less than four months he turned over the business to Hagen and brought his suit in the Chicago court. The case of *Barron* v. *Myers,* 146 Mich. 510 (109 N. W. 862), is quite in point. Mr. Justice HOOKER, speaking for the court, there said:

"The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded. If he acts with reasonable promptness thereafter, it is sufficient. The law of laches should be used as a shield and not a sword."

We find support for the conclusion reached by us on this question in the case of *Mellon* v. *Hagen,* 187 Ill. App. 486. This is the case heretofore referred to, brought by this defendant to rescind his contract of purchase of the half interest in the saloon. The bill is not before us, but two lengthy affidavits filed in that suit are made a part of this record, and from them it is apparent that Hagen was there charged with fraud substantially as alleged in the answer in this case. Hagen demurred, and the trial court sustained his demurrer; on appeal, the demurrer was overruled, and it was held that he had a cause for equitable relief.

But it is not necessary that the contract be rescinded in order to afford defendant relief in this proceeding. *Carroll* v. *Rice,* Walker's Ch. 373; *Smith* v. *Werkheiser,* 152 Mich. 177 (115 N. W. 964, 15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406). In the first of these cases, the bill was filed to rescind a sale of real estate

and the cancellation of certain securities given for the purchase price. There had been a delay of four years, during which time the value of the real estate had materially decreased, and it was held that the delay precluded rescission of the contract, but that complainants' "damages when ascertained may, by a decree of the court, be directed to be indorsed as so much paid on his bond for the purchase money." In the *Smith Case*, the contract had been expressly affirmed. Complainants, however, insisted that a fraud had been perpetrated upon them, and that their damages exceeded the amount of a mortgage which one of the defendants was threatening to foreclose. The defendant assignee of the mortgage by way of cross-bill sought the foreclosure of the mortgage. It was found that the assignee of the mortgage was not a holder in good faith, and it was held by this court that, as complainants' damages exceeded the amount of the mortgage, the prayer of the bill for a cancellation of the mortgage should be granted, following the *Carroll* and other cases cited.

In the instant case, we are satisfied that defendant's damages, growing out of the fraud perpetrated on him by Hagen, exceed the amount of the mortgage in question.

For the reasons given, the decree of the court below is affirmed, with costs to defendants.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.