MILLER *v.* COMMERCIAL STATE SAVINGS BANK.

1. FRAUD—LACK OF DILIGENCE IN DISCOVERING FRAUD NO BAR TO RELIEF.

Where false representations are made and relied upon the courts will not refuse relief because the party defrauded has not been more diligent, but has reposed too much confidence where confidence was not due, and refrained from investigating with greater care the truth of the representations made to him.

2. SAME—EVIDENCE—SUFFICIENCY.

That false representations were made to plaintiffs and that they relied upon them to their injury, *held*, established by the record.

3. SAME—WHERE FRAUD ESTABLISHED BURDEN IS UPON HOLDER TO ESTABLISH BONA FIDES.

In a suit to set aside a sale of corporate stock on the ground of fraud and to restrain enforcement of payment of a note given therefor, where fraud in the procurement of the note was established, the burden was upon defendant bank, holder of the note, to establish that it was a *bona fide* purchaser.

4. SAME—BANK NOT BONA FIDE PURCHASER WHERE IT HAD KNOWL-
   EDGE OF FRAUD BEFORE PAYING FOR NOTE.

   Where the officers of a bank, before paying for a note
   which it had accepted in the usual course of trade, learned
   that it had been procured by the payee from the maker
   by fraud, it was not a *bona fide* purchaser although it had
   no knowledge of the fraud when the note was accepted.

Appeal from Montcalm; Hawley (Royal A.), J.
Submitted April 18, 1924.     (Docket No. 99.)     De-
cided June 2, 1924.

Bill by George W. Miller and another against the
Commercial State Savings Bank of Greenville, Mich-
igan, and others to set aside a sale of corporate stock
on the ground of fraud.     From a decree for plaintiffs,
defendant Commercial State Savings Bank appeals.
Affirmed.

*F. C. Miller,* for plaintiffs.

*Griswold & Cook,* for appellant.

FELLOWS, J.     Plaintiffs claim that on January 6,
1921, they were induced by two men named Parrott
and Foster, who exhibited purported credentials as
representatives of defendant Michigan Guaranty
Corporation, to purchase 20 shares of stock of that
company at $150 per share and give two notes payable
to such company, one for $750 and the other for
$2,250.     It is their claim that these two men made
material false and fraudulent statements, representing
to them that they were sent by former Senator Smith,
president of the company, and who was favorably
known to Mr. Miller; that the stock offered was com-
pany stock worth $150 a share and would soon be
worth $200 per share; that the company would accept
notes which would be paid out of dividends declared
by the company.     We shall not detail in full the

representations as it is not seriously controverted but that they were false. The company had withdrawn the sale of its stock and the authority of Parrott and Foster to sell stock of the company, if they were ever legally authorized so to do (a question of some doubt), had been annulled. It is fair to be inferred that they were selling stock of defendant Colfax Gibbs to whom we shall have occasion to later refer. The $2,250 note was disposed of to defendant Jackson City Bank and the $750 note to defendant Commercial State Savings Bank of Greenville. The manner of disposition of the $750 note was substantially as follows: Parrott and Foster exhibited their credentials to an officer of the bank and indorsed the note: "Without recourse, Michigan Guaranty Corporation, W. D. Parrott, special representative," and the bank issued its certificate of deposit payable to the Michigan Guaranty Corporation bearing 3 per cent. interest and payable on the date plaintiff's note became due. It appears that the bank had during the preceding year when the guaranty corporation was selling its stock bought notes given by stock purchasers and issued certificates of deposit in the same manner; in those instances the notes were usually indorsed by officers of the company. The bill seeks to set aside the transaction, to restrain the banks from attempting enforcement of the notes, and the guaranty corporation from disposing of the stock so as to fix a deficiency liability and for general relief. Before the hearing the defendant Jackson City Bank surrendered to plaintiff the $2,250 note. Defendant Gibbs was not found and there was, therefore, no service upon him, and as to him the bill was dismissed. Defendant Michigan Guaranty Corporation filed an answer but upon the hearing made no claim of any rights by reason of the transaction and no relief was granted against it. The case narrowed, therefore, to one between plaintiffs and defendant Commercial State Savings Bank of

Greenville, Michigan, and the subject-matter to the $750 note.    Hereafter when we refer to the defendant or the bank we shall have reference to the Greenville bank.    From a decree granting plaintiffs relief the defendant appealed.    Many interesting questions are discussed by counsel which we shall not consider as we are convinced that the trial court not only reached the right result but disposed of the case on the correct theory.

We have noted the fact that it is not seriously controverted but that false representations were made to plaintiffs; indeed, defendant's counsel insist that they were so palpably false that plaintiffs should not have been deceived by them.    But where false representations are made and relied upon the courts will not refuse relief because the party defrauded has not been more diligent but has reposed too much confidence where confidence was not due, and refrained from investigating with greater care the truth of the representations made to him.    Smith v. McDonald, 139 Mich. 225; Smith v. Werkheiser, 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406); John Schweyer & Co. v. Mellon, 196 Mich. 590.    Mr. Miller was at the time the owner of 10 shares of stock of the guaranty corporation and had unbounded confidence in the personnel of its management.    Parrott and Foster came to him with credentials fair on their face, claiming to represent the company in which he already was a satisfied investor.    That the representations made were false is established, and that Mr. Miller and his wife relied upon them to their injury we entertain no doubt.

Fraud in procuring the note having been established the burden was upon the defendant to establish that it was a bona fide purchaser, that it had taken the note in due course and for value, without notice of its infirmities.    Mace v. Kennedy, 68 Mich. 389; Thompson v. Village of Mecosta, 127 Mich. 522; Merchants' Nat.

*Bank* v. *Wadsworth*, 166 Mich. 528; *John Schweyer & Co.* v. *Mellon, supra.*   We are not persuaded that when the bank took the note on January 6th its officers knew plaintiffs had been defrauded so that its taking the note was *mala fides.*   The trial judge did not so find.   He did find, however, that before the bank paid for the note it was fully advised that a fraud had been perpetrated on plaintiffs.   With this we agree.   Within a month after the note was given Mr. Miller advised the vice-president of the bank of the fraud in procuring the note.   Mr. Ranney, the president of the bank, was a member of the board of directors of the guaranty corporation.   We do not impute to the bank the knowledge he received as such director, but the record discloses that Mr. Miller talked with him on several occasions.   Mr. Ranney was dead at the time the case was heard and Mr. Miller was not permitted to testify to these conversations; he did, however, produce a letter written by Mr. Ranney to him bearing date June 18th in which Mr. Ranney said:

"I forwarded your matter to William Alden Smith and this is his reply.   We believe, Mr. Miller, where you made the mistake was in not calling up either the guaranty corporation or if you had called me up I could have told you the stock sales had been closed. Really those two gentlemen that visited your house were practically in the same class to a certain extent in my opinion as a man who might come to our bank with a forged check.   They represented themselves as coming direct from William Alden Smith, when as a matter of fact they came from Colfax Gibbs and the guaranty corporation has no more responsibility than as though I had come to you to sell you some stock. If I represented myself as an agent direct from the corporation I certainly would be committing an act pretty close to a crime."

The burden being on defendant it was incumbent on it to establish not only that it had no knowledge of

infirmities in the note when it took it, but also that it had no knowledge of infirmities when it paid for it. Here the bank exchanged its promise to pay for plaintiff's promise to pay. The language of Justice HOOKER in *Drovers' Nat. Bank* v. *Blue*, 110 Mich. 31 (64 Am. St. Rep. 327) is very applicable. He there said:

"The testimony shows that no money or valuable thing passed at the time of the purchase. A mere credit was given by the bank for the note,—a promise to pay, in other words; and there is nothing to show that this credit was ever drawn upon, or that the account of which it became a part was exhausted, before the maturity of the note, or before notice of the fraud. This did not show the bank to be a purchaser for value, within the rule."

See, also, *Central Savings Bank & Trust Co.* v. *Stotter*, 207 Mich. 329. Had defendant's certificate of deposit passed into the hands of a *bona fide* purchaser so that defendant's liability on it had become fixed another question would be presented (*White* v. *Wadhams*, 204 Mich. 381), but so far as the record discloses such was not the case, and as we have stated the burden was on the defendant. The certificate of deposit was never delivered to the payee, Michigan Guaranty Corporation, but the record is convincing it remained in the hands of Colfax Gibbs, a promoter, at one time an agent of the corporation, but whose authority to act for the corporation had expired long before he indorsed the certificate of deposit, and this to the knowledge of defendant. The corporation made no claim to the certificate of deposit and the bank had a complete defense upon this record to any demand for its payment. We are convinced that long after Colfax Gibbs' authority to act for the guaranty corporation had ceased, and about the time the certificate of deposit became due, he indorsed it: "Without recourse, Michigan Guaranty Corporation by Colfax

227—Mich.—21.

Gibbs, sales manager," and sent it in the usual course through the banks. Defendant, without notifying plaintiffs and without giving them any opportunity to defend, paid it. The trial judge held that the payment for plaintiffs' note being made long after defendant's knowledge of its infirmities left it in the hands of the bank subject to these infirmities. With this we agree. We shall not pursue the subject further as we have recently considered it at length. *Republic National Bank* v. *Bobo, Same* v. *Tucker, ante,* 6.

The decree will be affirmed, with costs of this court.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.