SAMUEL KUSHNER, Appellant, v. RALPH ABBOTT, et al.

**Banks and banking:** NEGOTIABLE INSTRUMENTS : GOOD FAITH PURCHASE : GAMBLING CONTRACTS. A certificate of bank deposit is a negotiable instrument by which the issuing bank obligates itself to pay to the rightful holder the sum named in the certificate; and one acquiring the certificate under a blank indorsement in due course of business for value, before maturity and without notice, is a *bona fide* holder, under the Negotiable Instruments Act.

*Appeal from Linn District Court.*—HON. W. N. TREICH-LER, JUDGE.

WEDNESDAY, OCTOBER 16, 1912.

ACTION in equity to determine the right of plaintiff

to a certificate of deposit issued to him by the Commercial National Bank of Cedar Rapids, and now held by the First National Bank of Iowa City as indorsee for value without notice and in due course. The Commercial National Bank paid the amount of the certificate into court, and the decree of the lower court was that the First National Bank was entitled to the money. The plaintiff appeals.— *Affirmed.*

*Redmond & Stewart,* and *M. D. Porter,* for appellant.

*Ball & Ball,* for appellee.

McCLAIN, C. J.—It appears without controversy in the record that plaintiff, a resident of Cedar Rapids, the holder of a certificate of deposit in the Commercial National Bank of that city, was induced by the defendant Abbott to visit the gambling house of the latter in Iowa City and engage in the playing of poker, in the course of which play the plaintiff lost about $58, which was all the money he had with him. Thereupon said defendant solicited plaintiff to engage in further games, offering to take his check, but plaintiff proposed to procure, if he could, the money on his certificate, and thereupon indorsed the certificate in blank and delivered it either to defendant or to one Dehner, who was defendant's employee in the gambling house. Another citizen of Cedar Rapids who was present in the house identified plaintiff as the person to whom the certificate was payable. Plaintiff's testimony was that, having delivered the certificate to defendant, he was furnished chips with which to continue playing during the night, and, when the play was discontinued about half past 6 o'clock in the morning, defendant gave plaintiff $45 as the balance coming to him out of his certificate. Dehner testified, however, that plaintiff solicited him to procure cash for the certificate, which Dehner did by going out and getting some

money from an outsider, whereupon he delivered to the plaintiff $175 in cash, out of which plaintiff then bought chips from time to time in the progress of the game. The man who had identified plaintiff, testifying as a witness, corroborated Dehner in the statement that the money was delivered to plaintiff before the game was continued. On the next morning, Dehner presented the certificate of deposit bearing plaintiff's blank indorsement to the First National Bank of Iowa City, asking that the amount thereof be paid to him as holder, and at the request of the teller of the bank he added his blank indorsement to that of the plaintiff, whereupon the certificate was delivered and the amount called for was paid over to him.

Plaintiff was not the owner of a specific sum of money which the Cedar Rapids Bank was holding for him as bailee, but he was the owner of a negotiable instrument issued by the Cedar Rapids Bank by which it obligated itself to pay to plaintiff or to the rightful holder of the instrument the sum of money called for. *Mereness v. First National Bank,* 112 Iowa, 11; *Elliott v. Capitol City State Bank,* 128 Iowa 275.

The First National Bank of Iowa City, became the holder of this paper for value before maturity and without notice; for Dehner, being in possession of the paper and claiming it as his own, had apparent title by reasons of the blank indorsement of plaintiff and the bank acquired it in due course of business. The suggestion in argument, supported by citation of some of our cases, that absence of notice of defective title in Dehner, if his title was defective, was not sufficiently made out on the part of the bank's officers, is not supported by the record. The officers of the bank as witnesses practically admitted that Abbott had the reputation of being engaged in gambling, but they denied knowledge of any connection of Dehner with Abbott, and it nowhere appears that they had any notice of any connection of Abbott with any transaction involving the

transfer of the certificate of deposit. It is clear that the bank was not charged with notice of any irregularity in the previous transfer of the instrument. Therefore the First National Bank must be protected as *bona fide* holder (see Negotiable Instruments Act, Code supp. sections 3060-a57–3060-a59), unless its title is affected by the statutory provision (Code, section 4965)' that "all promises, agreements, notes, bills, bonds or other contracts, mortgages or other securities, when the whole or any part of the consideration thereof is for money or other valuable thing won or lost, laid, staked or bet, at or upon any game of any kind or any wager, are absolutely void and of no effect." The certificate of deposit itself was not affected by any gambling transaction, and the case of *Alexander v. Hazelrigg*, 123 Ky. 677 (97 S. W. 353), in which it was held that a negotiable note executed in payment of a wager was void under a statutory provision similar to ours, although it had passed into the hands of an innocent purchaser entitled to the protection of the Negotiable Instruments Act, is not in point. We do not find it necessary to determine, therefore, whether the adoption of the Negotiable Instruments Law has modified our prior statute relating to gambling transactions so as to render valid in the hands of an innocent holder a promissory note or other negotiable instruments executed in connection with or in pursuance of a gambling transaction. The case from Kentucky just cited is apparently in conflict with *Wirt v. Stubblefield*, 17 App. D. C. 283, which seems to be a leading case holding that the invalidity of a negotiable instrument executed in a gambling transaction will not defeat the rights of an innocent holder of such instrument. See article on the subject in 72 Cent. Law J. (1911) 264.

We think the evidence shows that Dehner was not, in fact, the agent of Abbott in furnishing to plaintiff the money used by him in continuing the gambling transaction; but, whether he was such agent or not, it appears by pre-

ponderance of the testimony that the money for his certificate of deposit was turned over to him, and that he subsequently used it by his own volition in a further gambling transaction. Plainly the certificate of deposit was not rendered void by the statute above cited, for its consideration was not affected in any way by gaming or wagering. It was in the hands of the plaintiff, an article of property not different in its nature from the sum of money which it represented and which was substituted for it in plaintiff's hands by his transaction with Dehner. It would not be contended that, if this sum of money belonging to plaintiff had been delivered to Abbott himself as the result of a gambling transaction, the plaintiff could follow it into the hands of a bank in which it had been deposited. Indeed, it could not be contended that if a chattel, having no characteristics of negotiability, such as for instance a watch, had been won by Abbott from the plaintiff and sold to a purchaser who took it without knowledge of the circumstances under which Abbott acquired apparent title, plaintiff could recover the chattel from such purchaser. 20 Cyc. 939, 943. There is nothing in the statute above quoted rendering the transfer of money or property lost in gambling void and of no effect in any such way as to defeat the rights of an innocent transferee who takes the property without knowledge of the gambling transaction in pursuance of which it was turned over or delivered. Of course, in one sense, the transfer of a chattel is a contract, but, after the transfer is completed by delivery, the rights of the transferee are not dependent on the validity of the contract itself, but are determined by considerations relating to his acquired title to the property. As we said in *Dee v. Sears-Natlinger Automobile Co.,* 141 Iowa, 610: "After property has been delivered to the successful party in consequence of a bet or wager, it is too late for another party to the transaction to attempt recission or raise the question of its legality." The Cedar Rapids Bank was

practically in the same situation as the bailee of the auto-
mobile in the case just cited, and became bound to pay the
money in its hands represented by the certificate of deposit
to the lawful holder of such certificate.

The decree of the trial court is therefore—*Affirmed.*