## PENNOYER v. DUBOIS STATE BANK*
### (No. 1249; September 28, 1926; 249 Pac. 795.)

CORPORATIONS—EVIDENCE—PRINCIPAL AND AGENT—BILLS AND NOTES
—DEFECTIVE TITLE—CONSIDERATION—RIGHTS OF HOLDER FOR
VALUE—HOLDER IN DUE COURSE—NEGOTIABLE INSTRUMENTS LAW—
BURDEN OF PROOF.

1. In suit on notes, plaintiff *held* not required to prove allegation that it was a corporation when questioned only by general denial.

2. Supreme Court does not take judicial notice of corporate character of a plaintiff.

3. Evidence *held* to justify finding that indorsers of notes were agents for payee with authority to negotiate the notes though holder failed to prove their express authority, since it could be established as in other cases of agency, under Negotiable Instruments Law, §  19.

4. Only interest maker of notes had in questioning authority of indorsers to negotiate notes was to protect himself against a payment to the wrong person, as provided in Negotiable Instruments Law, §  23; and where payee could not question transfer, maker was fully protected.

5. Where it appeared that notes given in payment of stock were obtained from defendant by fraud 'and title of payee was therefore defective, burden of proof was on transferee to show that it was a holder in due course.

6. ''Consideration'' to make one a holder in due course of an instrument within Negotiable Instruments Law may, in view of sections 25, 52, 191, be money property on a liability incurred on credit of instrument.

7. Holder of instrument, who has given therefor his promise, which he must perform, is in same position and entitled to same protection as one who pays for instrument in money or property at time of transfer.

8. Bank by giving certificates of deposit for notes took notes for ''value,'' within meaning of Negotiable Instruments Law, §§ 25, 52 (Comp. St. 1920, §§ 3958, 3985), and if it was under legal obligation to pay certificates when they became due, its right to protection as a holder in due course was then same as if it had paid money for the notes when it acquired them.

9. That bank giving certificates of deposit for notes on receiving notice of fraud in execution of notes could have protected itself from liability on certificates of deposit by enjoining their transfer or having them impounded by the court to await a decision on the question of fraud *held* insufficient to deny it protection as a holder in due course.

10. In suit on notes exchanged for certificates of deposit, burden on plaintiff to avoid effect of Negotiable Instruments Law, § 54 (Comp. St. 1920, §3987), and to prove that it was a holder in due course, *held* met by proof that bank to whom certificates were paid by plaintiff was a holder in due course of such certificates, in view of sections 45, 59 (sections 3978, 3992).

11. Fraud in execution of notes indorsed to plaintiff in exchange for certificates of deposit destroyed presumption that plaintiff was a holder in due course of notes, but did not destroy presumption that bank to whom certificates of deposit were transferred was holder in due course thereof.

*See Headnotes:    (1, 2) 14 CJ p. 163 n. 72; 14a CJ p. 824 n. 29; p. 857 n. 85.    (3, 4) 2 CJ p. 941 n. 58; p. 954 n. 83; p. 956 n. 86; 8 CJ p. 720 n. 19 New.    (5) 8 CJ p. 984 n. 60.    (6) 8 CJ p. 481 n. 68, 69, 71; p. 482 n. 80; p. 507 n. 52.    (7) 8 CJ p. 481 n. 71.    (8) 8 CJ p. 481 n. 73 New.    (9) 8 CJ p. 508 n. 58 New.    (10) 8 CJ p. 1009 n. 39; p. 1046 n. 9.    (11) 8 C J p. 986 n. 70 New; p. 988 n. 91, 95.

ERROR to District Court, Fremont County; ROBERT R. ROSE, Judge.

Action by the Dubois State Bank against George A. Pennoyer. Judgment for plaintiff, and defendant brings error.

*Ray E. Lee* and *D. A. Preston,* for plaintiff in error.

The corporate existence of defendant was not proven; the existence of private corporations will not be noticed judicially; Mahan v. Wyopa Co., 27 Wyo. 17; Adams Express Co. v. Hill, 43 Ind. 157. The question was put in issue by general denial; there was no evidence that Ray and Jones had authority to represent the loan company; a forged agreement is inoperative; 3956 C. S. The burden was on plaintiff below to prove the endorsements and also

authority of those making them; Cady v. Land Co., 201 Pac. 179; McKnight v. Parsons, (Ia.) 113 N. W. 858. Authority to endorse paper for a corporation must be shown by charter or by-laws; 14 a C. J. 452; Seaman v. Canal Assn. 29 Wyo. 391. Defendant in error had the burden of proving authority of agents to make the endorsements; Davis v. Co., 15 S. E. 547; Holdsworth v. Co., (Wyo.) 146 Pac. 603; Bank v. Bank, (Wyo.) 160 Pac. 1171. The court erred in refusing plaintiff permission to prove fraud; Butterworth v. Beach, 215 Pac. 1085; Glendo Bank v. Abbott, (Wyo.) 216 Pac. 700; Iowa Bank v. Carter, 123 N. W. 237. Notice of infirmity of the instrument, or defect of title, before full payment renders the payer a holder in due course only to the extent of amount theretofore paid; Callahan v. Land Co., 215 Pac. 831; Albany Bank v. Ice Co., 86 N. Y. S. 773. Delivery of the notes, and issuance of certificate of deposit, was not payment of purchase price of notes to payee; Bank v. Green, 103 N. W. 96; Thompson v. Bank, 150 U. S. 231; Davis v. Ward, 41 Pac. 1010. Defendant in error was not a holder in due course; Land Co. v. Morgan, (Calif.) 30 Pac. 1102; Bank v. Kelgord, 135 N. W. 548; Sherrill v. Co., 19 S. E. 365. Estoppel, not being pleaded, does not apply; Bates P. & P. 1580. Unauthorized endorsements cannot be ratified without new consideration; Workman v. Wright, 33 O. S. 405; Clark v. Peabody, 22 Me. 500. Even if facts established ratification, it did not cut off intervening rights of plaintiff in error; 2 Page Contracts, 1529; Pollock v. Cohn, 32 O. S. 514; Read v. Buffum, 21 Pac. 555; Henry v. Heeb, (Ind.) 16 N. E. 606; Shinew v. Bank, (Ohio) 95 N. E. 881; Bank v. Wentzel, (Pa.) 24 Atl. 1087; 3956 C. S.; Alexander v. Hazelrigg, 97 S. W. 353; Union Co. v. Buckman, 88 Pac. 708. Authority to sell stock is not even presumptive evidence of authority to endorse notes; 14a C. J. 452; Holdsworth v. Co., 23 Wyo. 52; Bank v. Bank, 24 Wyo. 423; Hatch Bro. Co. v. Black, 25 Wyo. 109.

*John Dillon,* for defendant in error.

Plaintiff in error comes within the provisions of Section 3956 C. S., as to forgery or want of authority to endorse; the bank was a bona fide holder; Roy and Jones had authority to endorse; maker of a note cannot object if payee does not; 1 Joyce Defs. 261. We concede the rule as to nullification by forgery; 3 R. C. L. 1001, 1106; Express Co. v. Bank, 181 N. W. 701. Clearly the title passed to defendant in error; no particular form of agency appointment is required to authorize an agent to sign for his principal; 3952 C. S. The point as to failure of proof, as to a corporate existence of defendant in error, is without merit; 14 C. J. 166; 7 R. C. L. 700. A certificate of deposit given for a note makes the holder of the note a holder for value; 1 Joyce Defs. 893. Defendant in error is holder for value; 3956 C. S.

KIMBALL, Justice.

This is an action by the Dubois State Bank as endorsee against the defendant as maker of two promissory notes. Trial was had without a jury and judgment was in favor of the plaintiff. The defendant brings the case here on error.

The notes were dated July 21, 1920, signed by defendant and payable 6 months after date to Wyoming Livestock Loan Company. They were given in payment for capital stock of Wyoming Livestock Loan Company. The defendant bought the stock at the solicitation of G. O. Roy and A. K. Jones, to whom the notes were delivered. On July 22, 1920, the plaintiff purchased the notes, receiving them from Roy and Jones, who endorsed them, "Wyoming Livestock Loan Company, by G. O. Roy, A. K. Jones." The plaintiff gave for the notes its negotiable certificates of deposit payable to the order of the Wyoming Livestock Loan Company, for the full amount of the notes.

The plaintiff's petition was in the usual form, and included the allegation that the plaintiff was a corporation.

Defendant demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action, and when the demurrer was overruled, filed an answer, the allegations of which may be summarized as follows: (1) a general denial; (2) that the endorsement of the notes by Roy and Jones was not authorized by the payee; (3) that defendant was induced to buy the stock and make the notes by false representations made to him by Roy and Jones, and (4) that plaintiff took the notes with knowledge that they had been obtained by fraud, and was not a holder in due course.

The plaintiff did not prove the allegation that it was a corporation. The defendant contends that that allegation was material to plaintiff's cause of action, and was put in issue by the general denial. The general, and what we consider the better, rule is to the contrary. 14 C. J. 163; 14a C. J. 824; Brady v. The National Supply Co., 64 O. St. 267; 60 N. E. 218, 83 Am. St. Rep. 753; Brady v. Palmer, 19 O. C. C. 687; Dietrichs v. Railroad Co., 13 Nebr. 43; 13 N. W. 13; Fletcher v. Co-operative Publishing Co., 58 Nebr. 511; 78 N. W. 1070; Northwestern H. & S. Co. v. Winnett, 67 Mont. 545, 216 Pac. 568. The appropriate syllibi of Brady v. The National Supply Co., supra, are as follows:

"Where a corporation commences an action, it need not aver in its petition that it is a corporation; and if such averment is made, it will be held to be immaterial and mere surplusage, and a general denial to a petition containing such averment will not impose upon the plaintiff the burden of proving on the trial that it is such corporation."

"To raise the issue of *nul tiel corporation*, the defendant must specially plead in his answer that the plaintiff is not a corporation. Smith v. Weed Sewing Machine Co., 26 Ohio St., 562, approved and followed."

We think the opinion in Mahan v. Wyopo Company, 27
Wyo. 17, 189 Pac. 633, relied upon by defendant, contains
nothing opposed to this view. It was said in that case
that the court does not take judicial notice of what cor-
porations are or are not organized under the laws of this
state. We do not take judicial notice of the fact that the
plaintiff is a corporation, but hold that the allegation of
that fact, when questioned only as in this case, need not
be proved.

It is contended by defendant that the evidence was in-
sufficient to show that Roy and Jones had authority from
Wyoming Livestock Loan Company to endorse and trans-
fer the notes to the plaintiff. Section 3956, Wyo. C. S.
1920, N. I. L. Sec. 23, provides:

"Where a signature is forged or made without the au-
thority of the person whose signature it purports to be,
it is wholly inoperative and no right to retain the instru-
ment, or to give a discharge therefor, or to enforce pay-
ment thereof against any party thereto can be acquired
through or under such signature, unless the party against
whom it is sought to enforce such right is precluded from
setting up the forgery or want of authority."

It may be conceded that plaintiff failed to prove ex-
press authority to Roy and Jones to negotiate the notes.
But their authority could be established as in other cases
of agency. Wyo. C. S. 1920, Sec. 3952, N. I. L. Sec. 19.
The evidence to show authority may be briefly stated. A
letter, dated July 6, 1920, from Wyoming Livestock Loan
Company to plaintiff's cashier refers to Messrs. Roy and
Jones as "our representatives." This letter does not show
the extent of the authority of Roy and Jones, but when
it was shown that they exchanged the notes in question
for certificates of deposit payable to Wyoming Livestock
Loan Company, and, as shall be presently explained, that
the certificates of deposit were received and negotiated
by that company, the court was justified in finding that

Roy and Jones were agents for the payee with authority to negotiate the notes. The only interest the defendant has in questioning the authority of Roy and Jones is to protect himself against a payment to the wrong person. Farmers etc. Bank v. Whitehead, 105 S. C. 100, 89 S. E. 657. That is the purpose of section 23, supra, of the Negotiable Instruments Law, as applicable to this case. As it is clear that the payee could not question the transfer to the plaintiff, the defendant is fully protected. Manchester v. Parsons, 75 W. Va. 793; 84 S. E. 885; Wegener v. Emetsburg Nat. Bank, 195 Ia. 1267, 193 N. W. 627, 631; Citizens State Bank v. Skeffington, (N. D.) 196 N. W. 953, 959; Lebo State Bank v. Booth, 111 Kan. 222; 206 Pac. 743.

Because of the manner in which the trial was conducted, it must be assumed that the notes were obtained from defendant by fraud, and the title of the payee was defective. The burden of proof, therefore, was on the plaintiff to show that it was a holder in due course. Glendo State Bank v. Abbott, 30 Wyo. 98, 216 P. 700, 34 A. L. R. 294. The plaintiff proved that when, on July 22, 1920, it became the holder of the notes it had no knowledge of the fraud. There was no evidence to prove the contrary. The defendant, indeed, admitted that, when first informed that plaintiff held the notes, he told plaintiff he would pay them, but he explains that this was before he discovered that he had been defrauded. Later, when he know of the fraud, he refused to pay.

For the notes, which were due in six months, the plaintiff gave its negotiable certificates of deposit due in nine months, payable to Wyoming Livestock Loan Company. The notes were made, transferred to plaintiff, and the certificates of deposit issued, in July, 1920. About December 31, 1920, the Wyoming Livestock Loan Company delivered the certificates of deposit as security to First National Bank of Cody. The certificates of deposit were endorsed in blank by the Wyoming Livestock Loan Company, but the date of the endorsement does not appear.

The First National Bank of Cody held the certificates un-
til they were due. They were then presented to the plain-
tiff for payment through other banks. When they came
to the plaintiff for payment, April 28, 1921, they bore the
undated, blank endorsement of the payee and the endorse-
ment of the First National Bank of Cody to the American
National Bank of Cheyenne for collection. When pre-
sented for payment, they were paid, and the First Na-
tional Bank of Cody then gave the Wyoming Livestock
Loan Company credit for the amount thereof. This suit
was commenced a year later, in April, 1922.

Section 3987, Wyo. C. S. 1920, N. I. L. Sec. 54, provides:

"Where the transferee receives notice of any infirmity
in the instrument or defect in the title of the person nego-
tiating the same before he has paid the full amount agreed
to be paid therefor, he will be deemed a holder in due
course only to the extent of the amount theretofore paid
by him."

Relying on this section, the defendant argues that the
plaintiff is not a holder in due course. The contention is
that the giving of the certificates of deposit was not pay-
ment, but only a promise to pay, and while the plaintiff
had no notice of the fraud when it took the notes and
issued the certificates, it did have notice before it paid
anything on the certificates, and cannot be deemed a hold-
er in due course.

The plaintiff having the burden of proving that it was
a holder in due course, we may assume that it was neces-
sary for it to prove that it was not a transferee affected
by section 54 of the Negotiable Instruments Law. Miller
v. State Savings Bank, 227 Mich. 316, 321; 198 N. W. 996;
Hodge v. Smith, 130 Wis. 326, 110 N. W. 192. The plain-
tiff's testimony to show lack of notice was confined to the
time when it took the notes and issued the certificates of
deposit. If, to avoid the affect of the statute, it was neces-
sary for plaintiff to prove that it had no notice of the

fraud when it paid the certificates of deposit, it failed to prove its case. But the plaintiff was unaffected by the statute if, when it acquired the notes, it "paid the full amount agreed to be paid therefor." To determine the meaning of this phrase, we may look to other provisions of the Negotiable Instruments Law, and to the cases involving the rights of purchasers entitled to protection because in good faith they have given value. A holder in due course must have taken the instrument "for value." N. I. L. Sec. 52. Value means "valuable consideration" (N. I. L. Sec. 191), and is any consideration sufficient to support a simple contract. N. I. L. Sec. 25. The consideration may be money, property or a liability incurred on the credit of the instrument. Duncan v. Gilbert, 29 N. J. L. 521, 537. The "value" must be such as to entitle the holder to protection. Section 54 is intended to define cases in which the holder must protect himself by refusing to make further payment. The section has always been considered as declaratory of the law as it existed before the enactment of the statute. Crawford, Neg. Ins. Law (3d ed.) Sec. 93; Brannan, Neg. Ins. Law, (4th ed.) p. 410. The law intended to be codified is that announced in Dresser v. Missouri etc. Co., 93 U. S. 92, 23 L. Ed. 815; and is similar to a principle applied in equity, stated by Judge Story, in Wormley v. Wormley, 8 Wheat. 421, 449, (5 L. Ed. 651) thus:

"It is the settled rule in equity that a purchaser without notice, to be entitled to protection, must not only be so at the time of the contract or conveyance, but at the time of payment of the purchase money."

Dresser v. Missouri etc. Co., supra, was a clear case for application of the rule. The plaintiff had bought notes made by defendant, aggregating $10,000. Plaintiff paid on acquiring the notes $500, and promised orally to pay the balance. Before he had paid anything more than $500, he received notice that the notes had been obtained from

the maker by fraud. This notice was accompanied by a
prohibition to pay. It was held that plaintiff could re-
cover from the maker only $500. This was because he
could have protected himself, after notice of fraud, by re-
fusing to make further payment. The opinion is care-
fully guarded so as not to control cases where the pur-
chaser has given a negotiable instrument, as witness the
following excerpts:

"It does not appear that, upon the purchase of the
notes in suit, the plaintiff gave his note or other obliga-
tion which might by its transfer subject him to liability."

Referring to the contention that negotiable paper may
be sold for less than its face value, the court said (italics
ours) :

"This is true; and if the plaintiff had bought the notes
in suit for $500, before maturity, and without notice of
any defense, and paid that sum, *or given his negotiable
note therefor*, the authorities cited show that the whole in-
terest in the notes would have passed to him, and he could
have recovered the full amount due upon them."

When the holder has given for the paper his promise
which he must perform, as, for instance, when he has in-
curred liability to a third person, it is quite clear that he
is in the same position, and entitled to the same protec-
tion, as one who paid for the paper in money or prop-
erty at the time of the transfer. Citizens Bank v. Shaw,
14 S. D. 197, 84 N. W. 779; Griswold v. Morrison, 63 Calif.
App. 93, 200 Pac. 62.

In the California case just cited, speaking of the effect
of section 54 of the Negotiable Instruments Law, the court
said:

"In our opinion this provision is applicable only where
the obligation incurred by the holder of the note is such

that, on discovering the infirmity in the instrument, he is relieved from all further legal obligation to make any further payment, as, for example, where the note has been transferred to him in consideration of his promise to make future payments to his transferer. In that case, if it should turn out that, by reason of fraud on the part of the transferer, the maker of the note had a defense thereto, the transferee would be under no legal obligation to pay the balance of the amount that he had agreed to pay to his transferer as a consideration for the transfer.''

We think this comment may be taken as a reasonable interpretation of the statute. How, then, does it affect the plaintiff who gave for the notes its negotiable certificates of deposit which were outstanding when plaintiff received notice of the defect in the title to the notes? There can be no doubt that when the plaintiff gave the certificates of deposit for the notes it took the notes for "value" within the meaning of sections 52 and 25 of the Negotiable Instruments Law—the other conditions necessary to make it a holder in due course being present—and if it was under a legal obligation to pay the certificates of deposit when they became due, its right to protection as a holder in due course was the same as if it had paid money for the notes when it acquired them.

It may be argued that when the plaintiff received notice of the fraud it could have protected itself from liability on the certificates of deposit by enjoining their transfer or having them impounded by the court to await a decision on the question of fraud. We believe the duty of bringing proceedings for such a purpose was on the defendant. It was he who had put the notes in circulation, and it was he who contended that the notes had been procured by fraud. If he expected to defend on the ground that plaintiff had not paid for the notes at the time they were transferred, he ought to have inquired as to the nature of the consideration, and would then probably have

learned that plaintiff had given for the notes its own negotiable certificates of deposit. If the defendant then thought that an action should be brought to prevent a transfer of the certificates of deposit, it would seem that such an action ought to have been commenced by the defendant who was prepared to assert and prove the fraud. Adams v. Soule, 33 Vt. 538, 550. Had the plaintiff purposely concealed from defendant the fact that the notes had been taken in exchange for certificates of deposit, and thus deprived the defendant of the opportunity to take steps to protect himself, the case might assume a different aspect. Simmons v. Hodges, 250 Fed. 424, 427, 162 C. C. A. 494. When plaintiff was notified of the fraud, it had no way of knowing that its certificates of deposit had not already been transferred to holders in due course. An inquiry to ascertain where the certificates were might have been a signal for their transfer. Even the commencement of an action for injunction against the then holder might have been ineffectual. Southard v. Latham, 18 N. Mex. 503, 138 Pac. 205, 50 L. R. A. (N. S.) 871, and note. In bringing such an action the plaintiff would have to decide at his peril that defendant's claim of fraud was true and face the burden of proving it. We cannot believe that the plaintiff was required to embroil itself in such litigation. See: Duncan v. Sherman, 29 N. J. L. 521, 540. Cases directly in point on this question are not numerous. Where a check has been given for the note in suit, it is held that the drawer of the check had no duty of stopping payment on the check after notice of the fraud in the note. Matlock v. Schuerman, 51 Or. 49, 93 Pac. 823, 17 L. R. A. (N. S.) 747; Miller v. Marks, 46 Utah 257, 148 Pac. 412; Reitherman v. Wheeler, (Mo. App.) 247 S. W. 222. The reasoning in these cases supports fully our views in this.

We come now to consider what was necessary to be proved by the plaintiff to show that it was not affected by section 54 of the Negotiable Instruments Law.

When the notes matured and plaintiff's cause of action accrued, the certificates of deposit were still outstanding and not yet due. If plaintiff's status were to be determined by the conditions at that time, there would be authority for holding that it was a holder in due course, and not affected by Section 54. Duncan v. Gilbert, 29 N. J. L. 521, 539; Howlett v. Fitzgibbon, 1. N. Y. Supp. 321; Montgomery Garage Co. v. Manufacturers' L. & I. Co., 94 N. J. L. 152, 109 Atl. 296, 22 A. L. R. 1224; Clayton v. Bank of East Chattanooga, 204 Ala. 64, 85 So. 271; Simmons v. Hodges, 250 Fed. 424; Ranchmen's Trust Co. v. Gill, 113 Kan. 261, 214 Pac. 413, 417. See: Digby v. Jones, 67 Mo. 104, 108.

But there is authority for holding that the plaintiff, to avoid the effect of section 54, and to sustain the burden of proving that it was a holder in due course, was required to prove that the certificates of deposit had been negotiated and that the plaintiff had either paid or become liable to pay them to some one other than the payee. This seems to have been held or assumed to be the rule in the following cases: Rush v. Mitchell, 71 Ia. 333; 32 N. W. 367; Fruegal v. Henschel, 7 N. D. 276; 74 N. W. 996, 66 Am. St. Rep. 642; Thomas v. Stone, Walk. Ch. (Mich.) 117; Davis v. Ward, 109 Calif. 186; 41 Pac. 1010; 50 Am. St. Rep. 29; Wynn v. Carter, 20 Wis. 114; City Bank v. Bryan, 72 W. Va. 29, 78 S. E. 400; Elmore Co. Bank v. Avant, 189 Ala. 418, 66 So. 509; Security State Bank v. Brown, 110 Nebr. 237, 193 N. W. 336; Miller v. State Savings Bank, 227 Mich. 316, 198 N. W. 996; Cartier v. Morrison, 232 Mich. 352, 205 N. W. 108.

Under any rule that can be gathered from the cases, both before and since the Negotiable Instruments Law, the plaintiff's evidence met the burden of proof if it was sufficient to establish that the First National Bank of Cody, to whom the certificates of deposit were paid by the plaintiff, was a holder in due course of such certificates. By section 3978, C. S. Wyo. 1920, N. I. L. Sec. 45, the

negotiation of the certificates of deposit to the First National Bank of Cody is deemed *prima facie* to have been effected before the certificates were overdue.  By section 3992, C. S., N. I. L. Sec. 59:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some other person under whom he claims acquired the title as a holder in due course."

If the plaintiff was entitled to the benefit of the presumptions declared by these statutes particularly the presumption stated in the first clause of section 59 of the Negotiable Instruments Law, there can be no doubt that proof that the First National Bank of Cody was the endorsee and holder of the certificates of deposit was a *prima facie* showing that it was a holder in due course, and sufficient to justify a finding of that fact, there being no other evidence to require a different finding.  The fact that the notes in suit had been procured by fraud, when established, or assumed, as it must be in this case, destroyed the presumption that plaintiff was a holder in due course of the notes (Glendo State Bank v. Abbott, 30 Wyo. 98, 105), but we cannot believe that it had the effect of destroying presumptions in favor of the First National Bank of Cody as the holder of the certificates of deposit.  The defendant, the victim of the fraud, was not a party to the certificates of deposit.  If the plaintiff had been sued by the endorsee of the certificates of deposit, it is at least doubtful whether the fraud practiced in obtaining the notes could have been set up as a defense.  See: Wegener v. Emetsburg Nat. Bank (Ia.) 193 N. W. 627.  We assume, however, that the plaintiff, if sued by the endorsee of the certificates of deposit, might have defended on the ground that the notes given for the certificates of deposit were worthless, and, therefore, the cetrificates of

deposit without consideration.  Mann v. Second Nat. Bank, 30 Kan. 412, 1 Pac. 579.  That defense would not have put upon the holder of the certificates of deposit the burden of proving that he was a holder in due course. Failure of consideration does not render the title defective.  Brannan, supra, p. 538, and cases cited.  The endorsee of the certificates of deposit, therefore, in a suit on the certificates, would have had the benefit of the presumption that it was a holder in due course.  For reasons at least as good the plaintiff in this case was entitled to rely upon that presumption.

We have deemed it proper to give to the last point most careful consideration, and to state our views at some length, because a different view, in which we regret we cannot concur, was reached by the Supreme Court of Michigan in the recent case of Carter v. Morrison, 232 Mich. 352, 205 N. W. 108.

We think the finding of the trial court that the plaintiff was a holder in due course of the notes was supported by the evidence, and cannot be disturbed.

The judgment will be affirmed.

*Affirmed.*

POTTER, Ch. J., and BLUME, J., concur.