PEOPLE'S SAVINGS BANK OF BLAKESBURG, Appellee, v. C. S. SMITH, Appellant.

No. 39568.

APRIL 14, 1930.

*Roberts & Roberts* and *L. L. Duke*, for appellant.

*Heindel & Hunt*, for appellee.

WAGNER, J.—On August 11, 1919, the appellant, Smith, executed and delivered to one P. P. O'Connor, an agent of the Associated Packing Company, his promissory note for $625.

 Three days later, he executed and delivered unto said agent a second promissory note, for $400. Said notes became due six months after their respective dates. They were what may be termed "myself notes," and were indorsed in blank by the appellant. These instruments were executed as a part of the purchase price of stock in the Associated Packing Company, a corporation. On August 14, 1919, the aforesaid two notes of the appellant and two other notes, of $250 each, were sold and transferred to the appellee bank, and as a part of the same transaction, the appellee bank executed and delivered unto O'Connor its certificate of deposit, in the amount of $1,525. This certificate of deposit provides as follows:

"The Associated Packing Company has deposited in this bank $1,525, payable to the order of themselves in current funds on return of this certificate properly endorsed, six months after date, with interest at the rate of 4 per cent per annum until due."

It is undisputed that this certificate of deposit was duly negotiated by the Associated Packing Company before maturity, when, in its course through commercial channels, it reached the Bankers' Trust Company of Des Moines, under indorsements, and the same was paid by the appellee bank to the Bankers' Trust Company on February 16, 1920.

Plaintiff's cause of action is founded upon the aforesaid two notes. The defendant pleads want of consideration for the notes,

138

and fraud in their inception. The appellee pleads the facts, upon which it contends that it is a holder in due course.

At the trial, the defendant offered some testimony tending to show acts of fraud by the Associated Packing Company and its agents, subsequent to August 14, 1919, and testimony claimed by him to show knowledge by the appellee bank of the alleged infirmities in the notes acquired by the appellee subsequent to August 14, 1919, the date on which it became the owner of the notes, and prior to February 16, 1920, the date of payment of the certificate of deposit. Objections by the appellee to this testimony were sustained. Consistently with the court's ruling on appellee's objections to the aforesaid testimony, the court instructed the jury that the giving by the appellee bank of the aforesaid negotiable certificate of deposit in exchange for the notes was a payment of value for said notes. The appellant excepted to said instruction.

We will first determine whether the court was in error in the giving of said instruction. The appellant raises no question relative to the instructions of the court as to other elements necessary to constitute the appellee a holder in due course. Therefore, the primary question in the case is, Did the giving by the appellee bank of a negotiable certificate of deposit in exchange for the notes constitute a payment of value for said notes? If this question be answered in the affirmative, then the appellant has no meritorious complaint to make as to the instruction or as to the rulings of the court on the offered testimony.

Under the statutory law, Section 1850 of the Code, 1897 (now Section 9184 of the Code, 1927), the appellee had the power to invest its funds in the purchase of the notes in question. There is no contention by the appellant, as was made in *Henderson v. Farmers Sav. Bank,* 199 Iowa 496, that the bank was without power to enter into the transaction for the purchase of the notes by the giving of a certificate of deposit, nor is there any showing, as there was in the cited case, that the bank had no funds with which to purchase the notes.

It will be observed that the certificate of deposit which was given in exchange for the notes in suit was payable in current funds. No question is raised as to the negotiability of said in-

strument. Said certificate of deposit is negotiable. See *Feder v. Elliott*, 198 Iowa 447; *Henderson v. Farmers Sav. Bank*, 199 Iowa 496.

A negotiable certificate of deposit is a written acknowledgment by a bank or banker of the receipt of a sum of money on deposit, by which the issuing bank obligates itself to pay to the rightful holder of the instrument the sum of money therein named. *Kushner v. Abbott*, 156 Iowa 598.

We have held that the giving of a bill of exchange or a promissory note in payment of either an existing or contemporaneous debt, in the absence of an agreement that it shall constitute absolute payment, is only conditional payment of the debt, the condition being that the instrument is honored and paid in the usual course of business. See *Gower v. Halloway*, 13 Iowa 154; *Dille v. White*, 132 Iowa 327. We have held that this same principle applies to payment through the medium of nonnegotiable certificates of deposit. See *Huse v. McDaniel*, 33 Iowa 406; *Park v. Best*, 176 Iowa 7; *Anthon State Bank v. Bernard*, 194 Iowa 1090. In *Park v. Best*, supra, the certificates of deposit were, for the purposes of the case, assumed to be nonnegotiable. In *Anthon State Bank v. Bernard*, supra, the certificate involved was held to be nonnegotiable. We there said:

"Counsel for appellant make the further point that plaintiff did not show such a purchase of the note as entitled it to be considered a bona-fide purchaser, in that it stands admitted that no money was paid or property delivered in payment for such transfer. As we have seen, the plaintiff's president testifies that the deal was made by him, and that, in consideration for the transfer of the note, the bank executed to the payee its certificate of deposit for an amount not shown. It does not appear that said certificate has ever been paid or redeemed, or that the money which it represents is not now in the bank. The certificate of deposit was simply the evidence of a debt by the bank to the payee. *It is not shown to have been negotiable in form,* nor the amount thereof, nor whether still outstanding. It is a well settled rule that the giving credit to the payee on his bank account, without a showing that the credit has been exhausted, is not a sufficient showing of consideration to make the bank an innocent purchaser. *City Deposit Bank v. Green*, 130 Iowa 384; *Central Sav. Bank v.*

*Stotter*, 207 Mich. 329 (174 N. W. 142); *Drovers' Nat. Bank v. Blue*, 110 Mich. 31 (67 N. W. 1105); *Farmers' & M. Bank v. Quasebarth*, 104 Kan. 422 (179 Pac. 300); also, comprehensive note on the subject in 6 A. L. R. 273. It is true that these decisions for the most part relate to cases where credit was given by the bank upon the seller's deposit account. The same rule was applied where the buyer of the paper gave his promissory note in consideration of the transfer. *Adams v. Soule*, 33 Vt. 538. *Whether any different rule would obtain where a negotiable certificate of deposit is given, we need not consider, as there is here no evidence to that effect.''* (The italics are ours.)

The rule is well settled that the giving of credit to the seller on his bank account, without a showing that the credit has been absorbed by antecedent indebtedness or subsequent withdrawals, is not a sufficient showing of consideration to make the bank an innocent holder; and where the credit has been only partially exhausted, the bank will be protected only *pro tanto*. See *City Deposit Bank v. Green*, 130 Iowa 384; *McKnight v. Parsons*, 136 Iowa 390; *Commercial Sav. Bank v. Colthurst*, 195 Iowa 1032. This is upon the theory that the purchasing bank has not paid for the note, but merely is the debtor of the seller. This principle applies with equal force to the issuance of a nonnegotiable certificate of deposit, and the giving of credit upon the seller's pass book. However, if the bank assumes a legal obligation to another on the strength of the deposit, it becomes a bona-fide holder. See *Montrose Sav. Bank v. Claussen*, 137 Iowa 73. We there said:

''The evidence showed that the amount of the note was placed to the credit of Haas in the appellant bank, and that, soon thereafter, and on the strength of the credit, the bank obligated itself to honor a check drawn on Haas for $1,000. Notwithstanding this last transaction, it is claimed by the appellee that appellant paid nothing for the note until after it had notice of its infirmities. The giving of credit alone would create the relation of debtor and creditor between the bank and Haas, and nothing more, and the bank would not thereby become a bona-fide holder, within the meaning of the law. *City Deposit Bank v. Green*, 130 Iowa 384. *But if it was true that the bank had assumed a legal obligation to another on the faith of the deposit or*

*credit, it became thereby a purchaser for value. Leach v. Hill,* 106 Iowa 171.'' (The italics are ours.)

The pertinent question in the instant case is: Did not the appellee bank, on the strength of the credit extended by the issuance of its negotiable certificate of deposit, assume an obligation to a third person? It thereby obligated itself to pay the amount thereof to the rightful holder, whosoever he might be. Whatever obligation there was in this respect became fixed upon the bank immediately upon the issuance of the negotiable certificate of deposit. It did pay the same to the holder, the Bankers' Trust Company, a third person. Every holder of a negotiable instrument is deemed *prima facie* to be a holder in due course. Section 9519, Code, 1927.

It is clearly apparent that there is a vast distinction as to liability upon a negotiable certificate of deposit and one that is nonnegotiable. On the nonnegotiable certificate of deposit, the bank's obligation is only to the payee, and any assignee thereof stands in no better position than the original payee. On the negotiable certificate of deposit, the bank's obligation is to pay whosoever may be the rightful holder, when due, and a third party may become the holder thereof in due course. It must be borne in mind that, in the instant case, the certificate of deposit given in exchange for the notes is negotiable, as well as the notes, and that any holder in due course of either of the instruments took the same free from prior defenses which might have been asserted as against them.

This court has not heretofore determined the question herein presented for decision. It was expressly reserved in our pronouncement in *Anthon State Bank v. Bernard,* 194 Iowa 1090. Section 9512, Code, 1927, defines a holder in due course. Among other things, he must have taken the instrument for *value.* ''Value is any consideration sufficient to support a simple contract.'' Section 9485, Code, 1927. Undoubtedly, the giving of the negotiable certificate of deposit for the negotiable notes is a good and sufficient consideration to constitute value. The appellant places his chief reliance on Section 9514, Code, 1927, which provides:

''Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the

same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

While there is a conflict of authority in other jurisdictions, the great weight of authority holds that the giving of a negotiable instrument for another negotiable instrument constitutes, at the time of the exchange or transfer, payment, within the meaning of the provisions of the Negotiable Instruments Law. See *Pennoyer v. Dubois State Bank*, 35 Wyo. 319 (249 Pac. 795) ; *Dresser v. Missouri & Iowa R. Const. Co.*, 93 U. S. 92 (23 L. Ed. 815) ; *Bank of High Hill v. Rockey* (Mo. App.), 277 S. W. 573; *Miller v. Marks*, 46 Utah 257 (148 Pac. 412) ; *Matlock v. Scheuerman*, 51 Ore. 49 (93 Pac. 823) ; *Montgomery Garage Co. v. Manufacturers Liability Ins. Co.*, 94 N. J. Law 152 (109 Atl. 296) ; *Gypsum Valley Nat. Bank v. Dillenbeck*, 111 Kan. 98 (205 Pac. 1022) ; *Elmore County Bank v. Avant*, 189 Ala. 418 (66 So. 509) ; *Reitherman v. Wheeler* (Mo. App.), 247 S. W. 222; *Rice v. Grange*, 131 N. Y. 149 (30 N. E. 46) ; *Citizens' Bank of Parker v. Shaw*, 14 S. D. 197 (84 N. W. 779) ; *Wilson v. Denton*, 82 Tex. 531 (27 Am. St. 908) ; *Security State Bank v. Brown*, 110 Neb. 237 (193 N. W. 336) ; 1 Daniel on Negotiable Instruments (6th Ed.), Section 187.

The reasoning of the court in *Pennoyer v. Dubois State Bank*, 35 Wyo. 319 (249 Pac. 795), is so concise and convincing that we prefer to quote copiously therefrom, rather than to content ourselves with a statement of the doctrine therein announced. The court therein said:

"Section 3987, Wyo. C. S. 1920, N. I. L. Sec. 54 [Negotiable Instruments Law], provides: 'Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him.' Relying on this section, the defendant argues that the plaintiff is not a holder in due course. The contention is that the giving of the certificates of deposit was not payment, but only a promise to pay, and while the plaintiff had no notice of the fraud when it took the notes and issued the certificates, it did have notice before it paid anything on the certificates, and cannot be

deemed a holder in due course. The plaintiff having the burden of proving that it was a holder in due course, we may assume that it was necessary for it to prove that it was not a transferee affected by Section 54 of the Negotiable Instruments Law. *Miller v. State Savings Bank,* 227 Mich. 316, 321, 198 N. W. 996; *Hodge v. Smith,* 130 Wis. 326, 110 N. W. 192. The plaintiff's testimony to show lack of notice was confined to the time when it took the notes and issued the certificates of deposit. If, to avoid the effect of the statute, it was necessary for plaintiff to prove that it had no notice of the fraud when it paid the certificates of deposit, it failed to prove its case. But the plaintiff was unaffected by the statute if, when it acquired the notes, it 'paid the full amount agreed to be paid therefor.' To determine the meaning of this phrase, we may look to other provisions of the Negotiable Instruments Law, and to the cases involving the rights of purchasers entitled to protection because in good faith they have given value. A holder in due course must have taken the instrument 'for value.' N. I. L. Sec. 52 [Wyoming Comp. Stat. 1920, Section 3985]. Value means 'valuable consideration' (N. I. L. Sec. 191) [Wyoming Comp. Stat. 1920, Section 4124], and is any consideration sufficient to support a simple contract. N. I. L. Sec. 25 [Wyoming Comp. Stat. 1920, Section 3958]. The consideration may be money, property or a liability incurred on the credit of the instrument. *Duncan v. Gilbert,* 29 N. J. L. 521, 537. The 'value' must be such as to entitle the holder to protection. Section 54 is intended to define cases in which the holder must protect himself by refusing to make further payment. The section has always been considered as declaratory of the law as it existed before the enactment of the statute. Crawford, Neg. Ins. Law (3d Ed.), Sec. 93; Brannan, Neg. Ins. Law (4th Ed.) p. 410. The law intended to be codified is that announced in *Dresser v. Missouri, etc., Co.,* 93 U. S. 92, 23 L. Ed. 815, and is similar to a principle applied in equity, stated by Judge Story, in *Wormley v. Wormley,* 8 Wheat. 421, 449 (5 L. Ed. 651), thus: 'It is the settled rule in equity that a purchaser without notice, to be entitled to protection, must not only be so at the time of the contract or conveyance, but at the time of payment of the purchase money.' *Dresser v. Missouri, etc., Co.,* supra, was a clear case for application of the rule. The plaintiff had bought notes made by defendant, aggregating $10,000. Plaintiff paid,

on acquiring the notes, $500, and promised orally to pay the balance. Before he had paid anything more than $500, he received notice that the notes had been obtained from the maker by fraud. This notice was accompanied by a prohibition to pay. It was held that plaintiff could recover from the maker only $500. This was because he could have protected himself, after notice of fraud, by refusing to make further payment. The opinion is carefully guarded so as not to control cases where the purchaser has given a negotiable instrument, as witness the following excerpts: 'It does not appear that, upon the purchase of the notes in suit, the plaintiff gave his note or other obligation which might by its transfer subject him to liability.' Referring to the contention that negotiable paper may be sold for less than its face value, the court said * * *: 'This is true; and if the plaintiff had bought the notes in suit for $500, before maturity and without notice of any defense, and paid that sum, *or given his negotiable note therefor,* the authorities cited show that the whole interest in the notes would have passed to him, and he could have recovered the full amount due upon them.' When the holder has given for the paper his promise which he must perform,—as, for instance, when he has incurred liability to a third person,—it is quite clear that he is in the same position, and entitled to the same protection, as one who paid for the paper in money or property at the time of the transfer. *Citizens Bank v. Shaw,* 14 S. D. 197, 84 N. W. 779; *Griswold v. Morrison,* 53 Calif. App. 93, 200 Pac. 62. In the California case just cited, speaking of the effect of Section 54 of the Negotiable Instruments Law, the court said: 'In our opinion this provision is applicable only where the obligation incurred by the holder of the note is such that, on discovering the infirmity in the instrument, he is relieved from all further legal obligation to make any further payment, as, for example, where the note has been transferred to him in consideration of his promise to make future payments to his transferor. In that case, if it should turn out that, by reason of fraud on the part of the transferor, the maker of the note had a defense thereto, the transferee would be under no legal obligation to pay the balance of the amount that he had agreed to pay to his transferor as a consideration for the transfer.' We think this comment may be taken as a reasonable interpretation of the statute. How, then, does it affect the plain-

tiff, who gave for the notes its negotiable certificates of deposit, which were outstanding when plaintiff received notice of the defect in the title to the notes? There can be no doubt that, when the plaintiff gave the certificates of deposit for the notes, it took the notes for 'value,' within the meaning of Sections 52 and 25 of the Negotiable Instruments Law,—the other conditions necessary to make it a holder in due course being present; and if it was under legal obligation to pay the certificates of deposit when they became due, its right to protection as a holder in due course was the same as if it had paid money for the notes when it acquired them. It may be argued that, when the plaintiff received notice of the fraud, it could have protected itself from liability on the certificates of deposit by enjoining their transfer or having them impounded by the court, to await a decision on the question of fraud. We believe the duty of bringing proceedings for such a purpose was on the defendant. It was he who had put the notes in circulation, and it was he who contended that the notes had been procured by fraud. If he expected to defend on the ground that plaintiff had not paid for the notes at the time they were transferred, he ought to have inquired as to the nature of the consideration, and would then probably have learned that plaintiff had given for the notes its own negotiable certificates of deposit. If the defendant then thought that an action should be brought to prevent a transfer of the certificates of deposit, it would seem that such an action ought to have been commenced by the defendant, who was prepared to assert and prove the fraud. *Adams v. Soule,* 33 Vt. 538, 550. Had the plaintiff purposely concealed from defendant the fact that the notes had been taken in exchange for certificates of deposit, and thus deprived the defendant of the opportunity to take steps to protect himself, the case might assume a different aspect. *Simmons v. Hodges,* 250 Fed. 424, 427, 162 C. C. A. 494. When plaintiff was notified of the fraud, it had no way of knowing that its certificates of deposit had not already been transferred to holders in due course. An inquiry to ascertain where the certificates were, might have been a signal for their transfer. Even the commencement of an action for injunction against the then holder might have been ineffectual. *Southard v. Latham,* 18 N. Mex. 503, 138 Pac. 205, 50 L. R. A. (N. S.) 871, and note. In bringing such an action, the plaintiff would have to decide at his peril that

defendant's claim of fraud was true, and face the burden of proving it. We cannot believe that the plaintiff was required to embroil itself in such litigation. See *Duncan v. Gilbert*, 29 N. J. L. 521, 540. Cases directly in point on this question are not numerous. Where a check has been given for the note in suit, it is held that the drawer of the check had no duty of stopping payment on the check after notice of the fraud in the note. *Matlock v. Scheuerman*, 51 Or. 49, 93 Pac. 823, 17 L. R. A. (N. S.) 747; *Miller v. Marks*, 46 Utah 257, 148 Pac. 412; *Reitherman v. Wheeler* (Mo. App.), 247 S. W. 222. The reasoning in these cases supports fully our views in this.''

Daniel, in his work on Negotiable Instruments (6th Ed.), Volume 1, Section 187, declares:

''Where one has given his own note in purchase of the note of another from the payee, notice to him by the maker not to pay his note given in purchase, and that the bought note originated in fraud, does not deprive him of the character of a bonafide holder for value, and he need pay no attention to such notice.''

Copious quotations of a similar nature could be made from the other cited cases, but we deem it unnecessary. We therefore hold, in accordance with the weight of authority, that the giving by the bank of its negotiable certificate of deposit in exchange for the negotiable notes in suit constituted payment, within the meaning of the provisions of our Negotiable Instruments Law, and that the court was not in error in so instructing, and in its rulings upon the introduction of evidence hereinbefore referred to.

As hereinbefore stated, the certificate of deposit given in exchange for the notes was paid by the plaintiff to the Bankers' Trust Company on February 16, 1920. It appears that, on September 13, 1920, the Central State Bank brought  suit against the appellee bank on certain certificates of deposit other than the one given in exchange for the one in suit. The petition in the Central State Bank case clearly shows that the certificate of deposit given in exchange for the notes involved in the present suit was not involved in that litigation. The plaintiff in that case could have no relief except as to the matters

alleged in the petition. The cashier of the bank testified that the certificate given for the notes in suit was not involved in the litigation between the Central State Bank and the appellee bank. It appears that appellant claimed that it was therein involved. In the answer in the Central State Bank case, the appellee bank pleaded that, at the time of issuing said certificates of deposit (those referred to in the petition), the defendant (plaintiff herein) received no money or property or anything of value other than certain notes given by Anderson, McElroy, Kosman, Smith, and two Petersons. Apparently the inclusion of the names Smith and Peterson in the foregoing statement in the answer was a misstatement, but we need not and do not pass upon the fact. In the instant case, the appellee bank, without objection, introduced in evidence the petition in the Central State Bank case, for the purpose of showing that the certificate of deposit given in exchange for the notes in suit was not involved in that litigation. Thereupon, the appellant offered in evidence the entire answer, and appellee's objection thereto was sustained. While appellant may have been entitled to introduce the aforesaid contradictory statement, the entire answer was not admissible for that purpose, and no offer was made of said statement as separated from the entire answer. We find no error at this point.

We have considered all of the complaints made by the appellant, and find no reversible error, and the judgment of the trial court is hereby affirmed.—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, DE GRAFF, KINDIG, and GRIMM, JJ., concur.