L. A. ANDREW, STATE SUPERINTENDENT OF BANKING, Appellant, v. F. W. PETERSON, Appellee.

No. 41349.

June 24, 1932.

William A. Hunt and George F. Heindel, for appellant.

Roberts & Roberts and L. L. Duke, for appellee.

Evans, J.—The note in suit was one of four which were negotiated to the plaintiff bank on August 14, 1919. These four notes totaled the sum of $1,525. In payment therefor the plaintiff bank, through its cashier, issued its certificate of deposit for such sum. At a later time such certificate of deposit was fully paid. One of these four notes was involved in Peoples Savings Bank v. Smith, 210 Iowa 136. The main contentions

of the respective parties may be briefly stated: For the plaintiff it is contended that the defendant has failed to prove his alleged defense of actionable fraudulent representations; that in any event the plaintiff purchased the notes in good faith and for value and is a holder thereof in due course. For the defendant it is contended that the defense of fraudulent representations was conclusively proved as a matter of law, and that the plaintiff conclusively failed to prove that it was a holder in due course; that on the contrary it was conclusively proved that the plaintiff was not a holder in due course because it failed wholly to show that it paid value therefor.

Under the issues, as made by the pleadings, the burden was upon the defendant to establish his defense of fraudulent representations in the inception of the transaction. Upon such a showing by the defendant, the burden was shifted to the plaintiff to show that it purchased the note in good faith and for value, within the meaning of Section 3060-a52 (Sec. 9512, Code, 1931). In directing a verdict the trial court necessarily held that the defendant prevailed as a matter of law upon both issues and that the plaintiff was not entitled to go to the jury upon either. We proceed therefore to a consideration of the record as bearing upon each issue.

I. Was the evidence of fraudulent representations introduced by the defendant of such character as to warrant an affirmative finding by direction of the court? The fraudulent representations to the defendant were recited in his testimony as follows:

"They said they were going to establish a big plant up there and now was the time for the farmers to get in and buy some of this stock; it was going to be a great paying proposition; make great dividends; and said it was the farmers' duty to buy this stock so that we would have a packing company close at Des Moines; that as many farmers ought to go in as could. They urged me to take ten shares in it. Q. Did they say anything about what the dividends would probably be, or anything of that kind? A. Yes, sir. They said the dividends would run 25 to 60 per cent. Q. Anything said about whether or not the notes given would be disposed of? A. Yes, sir. Q. What was said on that? A. He says, 'You give those notes and the

dividends of the plant will pay it off,' he says. He says, 'You will never need to put out a dollar, the dividends will pay it all.' Q. Did you ever get any stock for the notes you gave? A. No, sir. Q. Were either of these notes you gave there at the time ever returned to you? A. No, sir. Q. Have you ever received anything in consideration for those notes,—any money, cash, or anything else? A. No, sir.''

"In giving the note, I relied upon the representation made by O'Connor and the man from whom I made the purchase, and but for that, would not have bought the stock and give the note.''

Other evidence was introduced tending to show the falsity of said representations. Sufficient to say that the representations above set forth and the evidence in support of the alleged falsity thereof were not of such conclusive character as to justify the direction by the court of an affirmative finding thereon. Whether it can be said affirmatively that they were sufficient to go to the jury, we have no occasion to consider. We cannot avoid the observation that the evidence is sparse. Upon a new trial the evidence may be strengthened at that point. It is clear to us that the plaintiff was at least entitled to go to the jury on that issue.

II. Did the plaintiff fail as a matter of law to show that it was a purchaser of the note in good faith and for value and that it was a holder in due course? The controversy at this point centers upon the validity of the certificate of deposit issued and delivered by the plaintiff to the payee of the note in the purchase thereof. The plaintiff was a Savings Bank and was operating under the provisions of Chapter 10, Title IX, of the Supplement to the Code, 1913, then in force. In payment of the four notes the cashier issued a certificate of deposit for $1,525, which certificate was later paid in full. No question of its validity was ever raised. Though the burden at this point is upon the plaintiff, the defendant takes the offensive, and asserts that such certificate was wholly void under the provisions of Section 1855-a of the Code Supplement, 1913; that because such certificate was void, no "value" was paid for the note; and that therefore the plaintiff wholly failed to bring itself within

the definition of a holder in due course as defined in Section 3060-a52 (Sec. 9512, Code, 1931).

Said Section 1855-a is as follows:

"State and savings banks may contract indebtedness or liability for the following purposes only: for necessary expenses in managing and transacting their business, for deposits, and to pay depositors; provided, that in pursuance to an order of the board of directors previously adopted, other liabilities not in excess of amount equal to the capital stock may be incurred."

It was conceded that no order had ever been entered by the Board of Directors authorizing the issuance of this certificate. The argument of defendant therefore is that the certificate purported to create an indebtedness and was therefore in violation of the quoted section.

In Henderson v. Farmers Savings Bank, 199 Iowa 496, we had before us a case where such a certificate was issued by a Savings Bank in the purported purchase of a note. In that case the bank had no funds available for the purchase of said note, nor had it any funds available for the purpose of a loan equivalent to such note. The purchase of the note rested solely upon the creation of an indebtedness. We held the certificate to be invalid.

In State ex rel. Carroll v. Corning Savings Bank, 139 Iowa 338, a certificate of deposit was under consideration, which had been issued in recognition of a loan, and not as evidence of a deposit. In insolvency proceedings the holder of the certificate claimed the status of a depositor and asked for statutory preference as such. We denied the preference and the status claimed, on the ground that no deposit was in fact made.

The defendant relies in support of his defense upon these authorities and upon Sweet v. Security Savings Bank, 200 Iowa 895. We have to consider therefore whether the holding in the cited cases is determinative of the issue in the case at bar. The cited section of the Code must be construed in the light of the other statutory provisions contained in the same chapter. Under such other provisions it was the duty of the bank officials to invest their funds. They were empowered thereunder to invest the same in the purchase and discount of notes. Paragraph 5 of Section 1850 of the Code Supplement, 1913, was as follows:

"5. It may discount, purchase, sell and make loans upon commercial paper, notes, bills of exchange, drafts, or any other personal or public security, but shall not purchase, hold or make loans upon the shares of its capital stock;"

The evidence discloses herein that at the time of the purchase of the notes in question the plaintiff bank had more than $15,000 over and above all requisite legal reserve and that the same was presently available for investment. The investment actually made was consistent with the power conferred and the duty imposed by such Paragraph 5. In Ubbinga v. Farmers Savings Bank, 108 Iowa 221, we held that the authority to sell, discount, purchase, and make loans on commercial paper, notes, etc., authorizes a savings bank to make and contract for the purchase of notes *notwithstanding the inhibition on contracting debt.*

In State ex rel. Carroll v. Corning Savings Bank, 139 Iowa 338, we held that it is within the power of a savings bank to employ such means and assume such obligations as are ordinarily and customarily resorted to in the banking business, and such a bank may incur liabilities in the transfer of paper such as is ordinarily essential and customary under the law merchant.

From the foregoing it follows necessarily that on August 14, 1919, the cashier had power to purchase the notes in question; and this is so whether he had power to issue a certificate of deposit therefor or not. The argument for appellee is that the certificate of deposit was void and that therefore no value was paid for the notes. The certificate was in fact paid in due course.

In the case of Peoples Savings Bank v. Smith, 210 Iowa 136, already cited, we held, upon the record before us therein, that this particular certificate of deposit was valid and that it operated as payment of the purchase price of the notes. We differentiated the record therein from the record in the Henderson case, 199 Iowa 496. It now devolves upon us to differentiate the present record before us from the record in the Henderson case. We now hold that the only material differentiation between the record in the case at bar and the record in said Henderson case is that relating to the possession of funds for investment. In the Henderson case the bank had on hand no

available funds either for the making of loans or for the purchase of notes; whereas in the case at bar the bank did have such available funds and did have the power through its managing officials to invest the same either in the form of loans or in the purchase of notes. What we held therefore at this point in the former case of Peoples Savings Bank v. Smith we must hold again herein. This means that there was no infirmity in the certificate of deposit as a payment of value for the notes purchased.

Whether the bank acted in good faith and without notice of any infirmity is a question ordinarily for the jury. In view of the fact that there must be a reversal herein in any event we do not pass upon the sufficiency of the plaintiff's evidence on this question further than to observe, as we have observed concerning the issue of false representations, that the evidence of plaintiff on this issue is also sparse. It may not be so upon a new trial.

III. Over the objections of the appellant, the defendant put in evidence a certain decree of the district court of Polk County, entered in the case of State ex rel. Attorney-general v. Associated Packing Company, which decree purported to dissolve the corporation on the ground of fraud in its organization and promotion. Neither of the parties hereto was a party to that decree. Nor had such decree been entered at or before the time of the transaction here under consideration. The proceeding in which the decree was entered was an assertion by the State of Iowa of its power of supervision over all corporations organized and doing business within the state. The decree in question was received in evidence in the case of Udell Savings Bank v. Hollingsworth, 194 Iowa 440. The question of its admissibility was there raised and considered. The question has its perplexities, but we held in that case that the decree was admissible.

It is to be borne in mind that the proceeding in which that decree was entered was not a lawsuit in the ordinary sense, although it carried the form of one. The State, as plaintiff, was seeking nothing in the way of proprietary rights. It was not an adversary in the ordinary sense. It brought its suit as a sovereign, and for the protection of its citizens. It had exercised its sovereign right to license the corporation. It was un-

der duty to exercise its sovereign right of regulation and restraint. The suit was in the nature of an inquiry or inquisition, instituted for the purpose of ascertaining whether the promoters of the corporation were using its coverage for the purpose of defrauding the citizens of the state. Though the decree went against the defendant it was not a *victory* for the sovereign. Rather was it a thing of sorrow,—a sort of death in the family. If integrity had been found in the corporation by the inquiry, it were more to be desired by the sovereign than an adverse finding against the defendant.

Though therefore the parties hereto were not parties to that suit by name, yet they were all under the sovereign wing and represented by the sovereign name. It is in some such sense as this that we have held the decree to be admissible in civil actions by litigants against the same corporation. Such holding is beyond the pale of the ordinary rule that an adjudication is not binding or admissible in evidence as against one who was not party or privy thereto. If such decree were not operative as an aid to the redress of litigants who had innocently dealt with the corporation to their hurt, then it could not be operative at all. The trial court was governed by our previous holding. We are not disposed to overrule it. The finding of the court in the decree had some bearing both on the question · of fraud in the sale of the stock and upon the question of consideration to the subscribers of stock.

We hold only that the evidence of fraudulent representations as made to the defendant, and of the falsity thereof, was not of such conclusive character as to justify the direction of a verdict on the issue. As to the sufficiency of the evidence on that issue to go to the jury, and as to the sufficiency of the evidence of good faith on the part of plaintiff in the purchase of the notes, we make no affirmative finding. It follows that in directing a verdict for the defendant the trial court erred.

Its judgment is accordingly—Reversed.

WAGNER, C. J., and STEVENS, DE GRAFF, ALBERT, MORLING, and KINDIG, JJ., concur.